# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| ETHAN RADVANSKY, on behalf of himself and others similarly situated, | No. 1:25-cv-02777-TWT |
| Plaintiff, | CLASS ACTION |
| v. | JURY TRIAL DEMANDED |
| DESTINATION XL GROUP, INC., | |
| Defendant. | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE PLAINTIFF'S COMPLAINT

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ....................................................................................1

II.     RELEVANT ALLEGATIONS ..................................................................4

III.    APPLICABLE LEGAL STANDARDS.......................................................5

IV.     ARGUMENT.........................................................................................6

      A.      Section 227(c) of the TCPA Does Not Apply To Text
           Messages. .................................................................................6

      B.      The Complaint Should Be Dismissed Under Rule 12(b)(6)
           Because Plaintiff Failed to Plead Facts Supporting a Theory of
           Liability. ..............................................................................10

      C.      The Complaint Should Also Be Dismissed Under Rule 12(b)(6)
           Because It Lacks Facts Supporting Key Elements of a DNC
           Claim. ..................................................................................17

      D.      Alternatively, Plaintiff's Facially Uncertifiable Class
           Allegations Should Be Stricken Under Rules 12(f) and/or 23..........22

V.      CONCLUSION....................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aaronson v. CHW Grp., Inc.*,
   2019 WL 8953349 (E.D. Va. Apr. 15, 2019) ....................................................14

*Abante Rooter & Plumbing v. Farmers Grp., Inc.*,
   2018 WL 288055 (N.D. Cal. Jan. 4, 2018)........................................................11

*Abramson v. 1 Glob. Capital, LLC*,
   2015 WL 12564318 (S.D. Fla. Sept. 23, 2015)................................................17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................................5, 16

*Bacon v. Stiefel Lab'ys, Inc.*,
   275 F.R.D. 681 (S.D. Fla. 2011)......................................................................23

*Balthazor v. Cent. Credit Servs., Inc.*,
   2012 WL 6725872 (S.D. Fla. Dec. 27, 2012)...................................................23

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................................5, 16

*Belleville v. Florida Insur. Services, Inc.*,
   2024 WL 2342337 (S.D. Fla. May 23, 2024), *report and rec. adopted in
   part,* 2024 WL 2794108 (May 31, 2024)...........................................3, 11, 12, 13

*Bennett v. Celtic Ins. Co.*,
   2022 WL 865837 (N.D. Ill. Mar. 23, 2022) ...............................................15, 16

*Blount v. D. Canale Beverages, Inc.*,
   2003 WL 22890339 (W.D. Tenn. July 23, 2003).............................................25

*Brown v. Nano Hearing Tech OPCP, LLC*,
   2024 WL 3367536 (S.D. Cal. July 9, 2024) ....................................................14

*Brownlee v. Allstate Ins. Co.*,
   2021 WL 4306160 (N.D. Ill. Sept. 22, 2021)...................................................13

*Carson v. Home Depot, Inc.*,
   2022 WL 2954327 (N.D. Ga. July 26, 2022) .....................................3, 11, 13, 17

*Chaparro v. Carnival Corp.*,
   *693* F.3d 1333 (11th Cir. 2012) ........................................................................5

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Cunningham v. Daybreak Solar Power, LLC*,
    2023 WL 3985245 (N.D. Tex. June 13, 2023) ...................................................17

*Cunningham v. Politi*,
    2019 WL 2517085 (E.D. Tex. Apr. 30, 2019), *report and rec. adopted*,
    2019 WL 2524737 (June 19, 2019) .....................................................................19

*Cunningham v. Rapid Capital Funding, LLC/RCF*,
    2017 WL 3574451 (M.D. Tenn. July 27, 2017), *report and rec. adopted,*
    2017 WL 3776165 (Aug. 31, 2017) ....................................................................19

*Davila v. Delta Air Lines, Inc.*,
    326 F.3d 1183 (11th Cir. 2003) ............................................................................5

*Dobronski v. Russo*,
    2024 WL 4363118 (E.D. Mich. Sept. 30, 2024) ...............................................14

*Dorfman v. Albertson's LLC*,
    2020 WL 86192 (D. Idaho Jan. 7, 2020) ...........................................................24

*Duran v. La Boom Disco, Inc.*,
    955 F.3d 279 (2d Cir. 2020) .................................................................................8

*Facebook, Inc. v. Duguid*,
    592 U.S. 395 (2021)..........................................................................................6, 7

*Foxx v. Ocwen Loan Servicing, LLC*,
    2012 WL 2048252 (M.D. Fla. June 6, 2012) ....................................................22

*Gen. Tel. Co. of the Sw. v. Falcon*,
    457 U.S. 147 (1982)...........................................................................................22

*GeorgiaCarry.Org, Inc. v. Georgia*,
    687 F.3d 1244 (11th Cir. 2012) ............................................................................5

*Gillam v. Reliance First Cap., LLC*,
    2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023) ..................................17, 18, 19, 20

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...........................................................................23

*Hicks v. Alarm.com Inc.*,
    2020 WL 9261758 (E.D. Va. Aug. 8, 2020) ...............................................19, 20

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Hirsch v. USHealth Advisors, LLC*,
    337 F.R.D. 118 (N.D. Tex. 2020) ........................................................25

*Hossfeld v. Am. Fin. Sec. Life Ins. Co.*,
    544 F. Supp. 3d 1323 (S.D. Fla. 2021) ...............................................12

*Hurley v. Messer*,
    2018 WL 4854082 (S.D.W.Va. Oct. 4, 2018) ....................................16

*In re Dish Network, LLC*,
    28 F.C.C Rcd. at 6583 .........................................................................12

*In re Joint Petition
filed by Dish Network, LLC*, 2013 WL 1934349, 28 F.C.C Rcd. 6574
    (2013) ..................................................................................................12

*In re Rules & Regs. Implementing the TCPA*,
    30 FCC Rcd. 7961 (2015) .................................................................1, 16

*In re Rules & Regulations Implementing the Telephone Consumer
Protection Act of 1991*,
    18 F.C.C. Rcd. 14014 (2003) ...............................................................9

*In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act
of 1991*,
    7 F.C.C. Rcd. 8752 (1992) ...................................................................8

*Jaafar Inv. Corp. v. Scottsdale Ins. Co.*,
    2019 WL 8014368 (S.D. Fla. June 7, 2019) .........................................6

*Jackson v. Motel 6 Multipurpose, Inc.*,
    130 F.3d 999 (11th Cir. 1997) .............................................................22

*Jones v. Blackstone Med. Servs., LLC*,
    2025 WL 2042764 (C.D. Ill. July 21, 2025)...........................6, 7, 9, 10

*Katz v. Caliber Home Loans, Inc.*,
    2023 WL 5311488 (N.D. Tex. Aug. 17, 2023) ....................................15

*Lawson v. Life of the S. Ins. Co.*,
    286 F.R.D. 689 (M.D. Ga. 2012).....................................................22, 25

*Lindsay Transmission, LLC v. Office Depot, Inc.*,
    2013 WL 275568 (E.D. Mo. Jan. 24, 2013) ....................................23, 24

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024)......................................................................7, 9, 10

*Mantha v. QuoteWizard.com*,
2022 WL 325722 (D. Mass. Feb. 3, 2022)..........................................20

*Matthews v. Senior Life Ins. Co.*,
2025 WL 1181789 (E.D. Va. Apr. 22, 2025)..............................13, 16

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
145 S. Ct. 2006 (2025)......................................................................9, 10

*Meeks v. Buffalo Wild Wings, Inc.*,
2018 WL 1524067 (N.D. Cal. Mar. 28, 2018) ....................................12

*Metzler v. Pure Energy USA LLC*,
2023 WL 1779631 (S.D.N.Y. Feb. 6, 2023) ......................................12

*Morgan v. U.S. Xpress, Inc.*,
2018 WL 3580775 (W.D. Va. July 25, 2018) ....................................19

*Nelums v. Mandu Wellness, LLC*,
2023 WL 5607594 (D.N.M. Aug. 30, 2023) ......................................11

*New Concept Dental v. Dental Res. Sys., Inc.*,
2020 WL 3303064 (S.D. Fla. Mar. 3, 2020) ......................................23

*Newhart v. Quicken Loans Inc.*,
2016 WL 7118998 (S.D. Fla. Oct. 12, 2016) ....................................23

*Nichols v. eHealthInsurance Serv., Inc*,
2025 WL 689721 (N.D. Cal. Mar. 3, 2025) ......................................22

*Pascal v. Agentra, LLC*,
2019 WL 5212961 (N.D. Cal. Oct. 16, 2019) ....................................11

*Payne v. Sieva Networks, Inc.*,
347 F.R.D. 224 (N.D. Cal. 2024)........................................................25

*Pepka v. Kohl's Dep't Stores, Inc.*,
2016 WL 8919460 (C.D. Cal. Dec. 21, 2016)....................................24

*Rogers v. Assurance IQ, LLC*,
2023 WL 2646468 (W.D. Wash. Mar. 27, 2023)..........................passim

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Rogers v. Postmates Inc.*,
    2020 WL 3869191 (N.D. Cal. July 9, 2020) ......................................................11

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009) ...............................................................................8

*Saunders v. NCO Fin. Sys., Inc.*,
    910 F. Supp. 2d 464 (E.D.N.Y. 2012) .................................................................2

*Sheski v. Shopify (USA) Inc.*,
    2020 WL 2474421 (N.D. Cal. May 13, 2020).................................................3, 12

*Smith v. Vision Solar LLC*,
    2020 WL 5632653 (E.D. Pa. Sept. 21, 2020)....................................................19

*Tel. Solicitations, Autodialed & Artificial or Prerecorded Voice Message
    Tel. Calls, & the Use of Facsimile Machines*,
    8 F.C.C. Rcd. 480 (1993)......................................................................................7

*Thomas v. Taco Bell Corp.*,
    582 F.App'x 678 (9th Cir. 2014) ........................................................................11

*Tillman v. Ally Fin. Inc.*,
    2017 WL 7194275 (M.D. Fla. Sept. 29, 2017)...................................................23

*Tuso v Lennar Corp.*,
    2024 WL 1239474 (S.D. Fla. Mar. 22, 2024) ...........................................passim

*Weingrad v. Top Healthcare Options Ins. Agency Co.*,
    2024 WL 4228149 (E.D. Pa. Sept. 17, 2024)....................................................17

*Wick v. Twilio Inc.*,
    2017 WL 2964855 (W.D. Wash. July 12, 2017)................................................15

*Wilson v. Skopos Fin., LLC*,
    2025 WL 2029274 (D. Or. July 21, 2025)..........................................................10

*Woodard v. Health Ins. All.*,
    2024 WL 942629 (N.D. Ill. Mar. 5, 2024) .........................................................14

## STATUTES

47 U.S.C. § 227(a)(4)................................................................................................7

47 U.S.C. § 227(b) ..........................................................................................8, 9, 10

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

47 U.S.C. § 227(c) ...............................................................................passim

Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991).................................................................................................7

## OTHER AUTHORITIES

47 C.F.R. § 64.1200(c)........................................................................passim

47 C.F.R. § 64.1200(f) ....................................................................18, 24

*How Text Messages Are Being Killed and Replaced*, TIME (Dec. 3, 2014), https://time.com/3612277/text-message-history-future/ ...................10

https://consumer.ftc.gov/articles/national-do-not-call-registry-faqs ......................21

## RULES

Fed. R. Civ. P. 12(b)(6).......................................................................passim

Fed. R. Civ. P. 23 ...........................................................................22, 23

## I.     <u>INTRODUCTION</u>

In his Complaint (Dkt. 1), Plaintiff Ethan Radvansky ("Plaintiff") alleges, in a conclusory fashion, that Defendant Destination XL Group, Inc. ("DXL") violated the National "Do Not Call" ("DNC") Registry provisions of the Telephone Consumer Protection Act ("TCPA"). Those provisions prohibit physically "initiat[ing]" more than one "telephone solicitation" call "by or on behalf of the same entity" in a 12-month period to a "residential telephone subscriber who has registered his or her telephone number" on the National DNC Registry. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). Plaintiff bases his claim on text messages purportedly sent to his cell phone without his consent. As shown below, however, Plaintiff has not stated such a claim or pled sufficient facts supporting one in accordance with federal pleadings standards, and he is not entitled to any relief under the TCPA in this case in any event.

Though the TCPA is an important remedial statute designed to protect consumers from harassing telemarketers, federal courts do not hold TCPA plaintiffs to lower pleading standards or give TCPA plaintiffs armed with nothing more than conclusions a free pass to discovery, either. This is for good reason. As the FCC noted, the TCPA unwittingly spawned a cottage industry of class action litigation in this country, "has strayed far from its original purpose" as a beneficial remedial statute, and has "become the poster child for lawsuit abuse" ever since its enactment. *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, 8073 (2015). In fact, as

the Court knows, dozens of new TCPA class actions are filed weekly (and sometimes daily) in federal courts in every Circuit, often by serial litigants looking for profit and not by consumers using the statute for its intended purpose. All this is unsurprising, given the broad financial relief the TCPA affords and the ease with which such claims can be brought and quickly settled for far beyond their value.[1] And while attorneys' fees are not available under the statute, even "remedial laws [like the TCPA] can be abused and perverted into money-making vehicles for individuals and lawyers" and used to seek a windfall of potentially ruinous damages and exorbitant legal fees from innocent defendants through expensive class action litigation. *Saunders v. NCO Fin. Sys.*, *Inc.,* 910 F. Supp. 2d 464, 465 (E.D.N.Y. 2012).[2] Given this potential for abuse, therefore, federal courts across the country have strictly held TCPA plaintiffs to applicable pleadings standards, and have routinely dismissed defective claims at the pleadings stage under Rule 12(b)(6). Plaintiff's Complaint should suffer the same fate.

Indeed, while it is lacking in plausible supporting facts, the primary defect with Plaintiff's Complaint is legal. This is because, under the plain and unambiguous language of the statute, text messages simply are not "calls" under DNC rules in Section 227(c) of the TCPA and its implementing regulations and, thus, are not

---

[1] Plaintiff can recover up to $500 in statutory damages per call, and trebled for willful/knowing violations. 47 U.S.C. § 227(c)(5). This may seem small individually, but can be ruinous in a class action, hence why most TCPA cases are styled as class actions and settled for much more than the named plaintiff would ever receive at trial.
[2] For example, PACER shows that Plaintiff is a serial professional TCPA litigant, who has been a named party in several other TCPA class actions.

covered by the statute. This forecloses his claim as a matter of law from the start. But even if *arguendo* texts were covered, not all "calls" to registered numbers violate the TCPA's DNC restrictions. Rather, the TCPA's DNC rules only prohibit more than one "telephone solicitation" in a 12-month period made "by or on behalf of the same entity" to a "residential telephone subscriber" who has registered his or her number on the National DNC Registry. Yet, Plaintiff did not properly allege the foregoing essential elements with sufficient non-conclusory supporting facts, as is required.

It is also well established that all TCPA plaintiffs must first plead facts supporting a viable theory of TCPA liability (*i.e.*, direct or vicarious liability) regardless of whether they plead facts supporting the other elements of their claim, or face dismissal.[3] This steadfast rule requires Plaintiff to plausibly allege that DXL (i) itself, not a third party, took the steps to "physically" send the subject text messages directly to his cell phone, as required for direct TCPA liability or (ii) had an agency relationship with or control over any third parties who did, as required to allege vicarious TCPA liability. At the same time, it is equally well-accepted that relying on

---

[3] *See, e.g., Tuso v Lennar Corp.,* 2024 WL 1239474, at *4 (S.D. Fla. Mar. 22, 2024) ("Because [plaintiff] has failed to allege that the Defendant is liable—either directly or vicariously—his [TCPA] claims must be dismissed."); *Belleville v. Florida Insur. Services, Inc.,* 2024 WL 2342337, at *1-4 (S.D. Fla. May 23, 2024), *report and rec. adopted in part,* 2024 WL 2794108 (May 31, 2024) (recommending and approving dismissal on these bases where plaintiff did not properly allege, with supporting facts, that the defendant physically placed the alleged calls); *Carson v. Home Depot, Inc.,* 2022 WL 2954327, at *5 (N.D. Ga. July 26, 2022) (ruling similarly); *see also Sheski v. Shopify (USA) Inc.,* 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020) (discussing the key differences between direct and vicarious TCPA liability, and dismissing).

the pled content of an allegedly violative communication (which is all Plaintiff is doing here), even if the defendant's name or products are mentioned in it, cannot avoid dismissal on these grounds. This defect <u>alone</u> is fatal to the Complaint under Rule 12(b)(6). Thus, for these reasons, Plaintiff's entire Complaint should be dismissed.

## II.   **RELEVANT ALLEGATIONS**

In pertinent part, Plaintiff alleges that he is and has been the "regular and sole user" of a cell phone number (ending in 7404) since March 6, 2025. Dkt. 1, ¶ 8. Plaintiff contends this number is used "as his personal residential telephone number" and is not used "for business or commercial purposes." *Id*. ¶¶ 9-10. The number was purportedly registered on the National DNC Registry on August 13, 2015, nearly a full decade before he purportedly became the "user" of the number. *Id*. ¶ 11.

According to Plaintiff, DXL "delivered, or caused to be delivered" "at least six" text messages to the subject phone number "thirty-one or more days after the phone was registered the DNC Registry" that advertised DXL's products and other offers. *Id*. ¶¶ 12-13; *see also id*. ¶¶ 2, 5, 17, 21, 28, 39, 56 (equivocally concluding that DXL "delivered, or caused to be delivered" the subject text message). The dates on the text messages shown in the Complaint suggest Plaintiff allegedly received these text messages less than 31 days after becoming the "regular and sole user" of the subject phone number. *Id*. ¶¶ 8, 13. Plaintiff contends that he "did not give [DXL] prior express consent or permission" to text his phone number and "did not request

information or promotional materials" from DXL. *Id*. ¶¶ 17-18. However, Plaintiff does not allege whether he ever provided his phone number to DXL or otherwise had an established business relationship with DXL. As shown below, such threadbare and conclusory allegations do not pass muster under federal pleading standards.

## III.  **APPLICABLE LEGAL STANDARDS**

Rule 12(b)(6) provides for dismissal for failure to state a claim for relief. A mere "formulaic" or a "threadbare recital of the elements" of a claim fails to meet the requisite pleading standard under this Rule. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id*. (quotation marks and citation omitted). Thus, a "bare assertion" or mere "conclusory allegation[s]" likewise cannot survive dismissal. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). Instead, to avoid a dismissal here, Plaintiff must "include factual allegations for each essential element of his [asserted] claim." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012).

However, while this Court must generally accept well-pled factual allegations as true under Rule 12(b)(6), "[c]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal" will not suffice. *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003); *see also Chaparro v. Carnival Corp., 693* F.3d 1333, 1337 (11th Cir. 2012) ("Factual allegations that are 'merely consistent with a defendant's liability' fall short of being

facially plausible."); *Jaafar Inv. Corp. v. Scottsdale Ins. Co.*, 2019 WL 8014368, at *1 (S.D. Fla. June 7, 2019) ("Defendant is correct that Plaintiff supports his allegations with insufficient specific facts about the nature and extent of [his] alleged loss.").

## IV.    <u>ARGUMENT</u>

As shown below, Plaintiff's Complaint fails to state a plausible TCPA DNC claim or to plead sufficient plausible facts supporting one here for several reasons; and his claim (based on text messages) fails as a matter of law in any event.

### A.    <u>Section 227(c) of the TCPA Does Not Apply To Text Messages.</u>

To begin, Plaintiff's claim fails immediately, as the TCPA's DNC provisions simply do not apply to text messages. Section 227(c) of the TCPA provides a private right of action to "[a] person who has received more than one ***telephone call*** within any 12-month period … in violation of the regulations prescribed under this subsection …." 47 U.S.C. § 227(c)(5) (emphasis added). As courts have observed, this section of the TCPA "does not mention text messages or SMS messages, and nowhere does the TCPA define 'telephone call' to include text and/or SMS messages." *Jones v. Blackstone Med. Servs., LLC*, 2025 WL 2042764, at *5 (C.D. Ill. July 21, 2025). The implementing regulations for Section 227(c) reference only "telephone solicitations" and are likewise devoid of any reference to text messages. 47 C.F.R. § 64.1200(c). Thus, these terms must be interpreted in the context in which the TCPA was enacted in 1991. *Facebook, Inc. v. Duguid*, 592 U.S. 395, 405 (2021).

As the Supreme Court recently reiterated, "[e]very statute's meaning is fixed at the time of enactment." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). Courts "must interpret what Congress wrote" when the statute was enacted and cannot rewrite the TCPA to update it for modern technology. *Facebook, Inc.*, 592 U.S. at 409. "Text messaging was not an available technology in 1991 [when the TCPA was enacted], and thus 'telephone call' would ***not*** have included text messages or SMS messages." *Jones*, 2025 WL 2042764, at *4 (emphasis added); *see also* Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991). "Thus, under a plain reading, Section 227(c)(5) of the TCPA does not regulate text messages." *Jones*, 2025 WL 2042764, at *4.

While the term "telephone solicitation" is defined in Section 227(a)(4) to include "the initiation of a telephone call or message…," that definition does not alter the result. 47 U.S.C. § 227(a)(4). First, the reference to "message" presumably refers to artificial or prerecorded voice messages, which were expressly regulated by the TCPA at the time of its enactment. *See, e.g., Tel. Solicitations, Autodialed & Artificial or Prerecorded Voice Message Tel. Calls, & the Use of Facsimile Machines*, 8 F.C.C. Rcd. 480 (1993) (identifying the types of calls for which an individual may recover). Indeed, "Section 227(a)(4) does not refer to 'text message'" and, as discussed above, "telephone call or message" could not have been interpreted in 1991 to include text messages, which were not yet in existence. *Jones*, 2025 WL

2042764, at *4. Second, the FCC's authority to implement regulations under Section 227(c) was limited to "the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations" and the 9 months after December 20, 1991. 47 U.S.C. § 227(c). Those regulations were implemented in 1992, as authorized, and do not discuss or refer to text messages. 47 C.F.R. § 64.1200(c); *see also In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752 (1992) (also devoid of any discussion of text messages).

In his Complaint, Plaintiff cites *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 280 n.4 (2d Cir. 2020) and *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) for the proposition that a text message is a "call" as defined by the TCPA. *See* ECF No. 1 ¶ 52. However, both of those decisions evaluated text messages under Section 227(b), which is not at issue in this case. *See Duran*, 955 F.3d at 280 (addressing the definition of an ATDS under Section 227(b) of the TCPA); *Satterfield*, 569 F.3d at 954 (finding that the "language and purpose of the TCPA support the conclusion that the ***use of an ATDS*** to make any call, regardless of whether that call is communicated by voice or text, is prohibited") (emphasis added)). The Ninth Circuit in *Satterfield* also confirmed that "the statute is silent as to whether a text message is a call within the Act" and instead deferred to the FCC's 2003 Order in finding texts can be considered calls under Section 227(b). *Id.*

Further, while the FCC previously stated in its 2003 Order that, under some circumstances, "calls" do include "text messages," that Order only addressed text messages in the context of the TCPA's automated calling provision, Section 227(b), which is not at issue in this lawsuit. *See In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14115-16 at ¶ 165, n.603-605 (2003); *see also Jones*, 2025 WL 2042764, at *4 ("[O]n its face…, the 2003 Order explicitly references only Section 227(b)"). In any event, the FCC's prior 2003 interpretation is not entitled to deference. *See McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 145 S. Ct. 2006, 2013 (2025) (holding "the Hobbs Act does not preclude district courts in enforcement proceedings from independently assessing whether an agency's interpretation of the relevant statute is correct"); *see also Loper*, 603 U.S. at 401 (overruling *Chevron* deference, finding "*Chevron* gravely erred [ ] in concluding that the inquiry is fundamentally different just because an administrative interpretation is in play"). This is true even though Section 227(c) of the TCPA affords certain rulemaking authority to the FCC. Under *McLaughlin* and *Loper*, courts must "independently interpret" statutes under ordinary principles of statutory interpretation—even where the statute delegates discretionary authority to an agency—and therefore must interpret the statute based on its plain language as "if no agency were involved." *Id*. at 400.

Applying *McLaughlin* and *Loper* leads to one inescapable result: the TCPA does not extend to forms of communications, like text messages, that did not exist at the time the TCPA was enacted. *See Jones*, 2025 WL 2042764, at *4-5 ("While the Court affords a certain amount of respect to the FCC's interpretation of the terms used in the TCPA, the fact remains that Section 227(c)(5) of the TCPA includes 'telephone call' and does not mention text messages or SMS messages, and nowhere does the TCPA define 'telephone call' to include text and/or SMS messages.") (citing *Loper* and Alex Fitzpatrick, *How Text Messages Are Being Killed and Replaced*, TIME (Dec. 3, 2014), https://time.com/3612277/text-message-history-future/ ("The world's very first text message, sent Dec. 3, 1992 . . . .")).

Thus, while Plaintiff may believe there are compelling reasons to expand Section 227(c) of the TCPA to reach the realities of today's technologies, only Congress can do that. "It is not for a court to legislate by reading into the TCPA something that is not there." *Jones*, 2025 WL 2042764, at *5. Therefore, as text are not covered by Section 227(c) of the TCPA, Plaintiff's Complaint should be dismissed in its entirety and <u>with prejudice</u> under Rule 12(b)(6) on this basis alone.[4]

### B.    <u>The Complaint Should Be Dismissed Under Rule 12(b)(6) Because Plaintiff Failed to Plead Facts Supporting a Theory of Liability.</u>

---

[4] While one district court recently reached a different conclusion, its holding relied heavily on FCC authority relating to Section 227(b) which, again, is not at issue in this case and in any event is not entitled to deference. *See Wilson v. Skopos Fin., LLC*, 2025 WL 2029274, at *4 (D. Or. July 21, 2025).

Even if the Court finds that Section 227(c) applies to text messages (it does not), to survive dismissal, Plaintiff must plausibly allege one of two potential theories of liability under the TCPA against DXL to avoid a dismissal: (1) direct liability or (2) vicarious liability. *Rogers v. Postmates Inc*., 2020 WL 3869191, at *3 (N.D. Cal. July 9, 2020) (citing *Thomas v. Taco Bell Corp.,* 582 F.App'x 678, 679 (9th Cir. 2014)). Plaintiff failed to do so, which warrants dismissal of his entire Complaint.

"For a person to 'make' [or 'initiate'] a call under the TCPA, the person must either (1) directly make the call, or (2) have [a common law] agency relationship with the person who made the call." *Pascal v. Agentra, LLC,* 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019) (quoting *Abante Rooter & Plumbing v. Farmers Grp., Inc*., 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018)). Courts throughout this Circuit have firmly adopted this rule. *See, e.g., Carson,* 2022 WL 2954327, at *5; *Tuso,* 2024 WL 1239474, at *4; *Belleville*, 2024 WL 2342337, at *4 (each collecting cases and dismissing on these grounds under Rule 12(b)(6)). Failure to plausibly allege either liability theory warrants dismissal of <u>any</u> TCPA claim in its <u>entirety</u>, regardless of whether there were facts pled supporting other essential elements. *See, e.g., Carson*, *Tuso* and *Belleville, supra*.[5] Plaintiff failed on both fronts.

---

[5] *See also Nelums v. Mandu Wellness, LLC*, 2023 WL 5607594, at *9 (D.N.M. Aug. 30, 2023) ("Because Plaintiff fails to satisfy the first elements of the TCPA and [an equivalent state statute]—that Defendants were directly or vicariously liable for the [subject] text messages—the Court does not reach Defendants' arguments regarding whether Plaintiff adequately plead the other elements" of the asserted claims.).

As to the former theory, direct liability under the TCPA applies <u>only</u> to persons or entities that "initiate" or "make" telemarketing calls, which in this context means to "***physically*** place" a call or send a text message directly to the plaintiff. *See, e.g., Sheski,* 2020 WL 2474421, at *2 (dismissing where the allegations did not "lead to the inference that [defendant] sent or was directly involved in [physically] sending the text messages at issue") (citing *In re Joint Petition filed by Dish Network, LLC*, 2013 WL 1934349, 28 F.C.C Rcd. 6574, 6583 ¶ 26 (2013) (emphasis added)).[6] *Accord Tuso* and *Belleville, supra.* However, direct TCPA liability "generally does not include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call" or the sending of a text. *In re Dish Network, LLC*, 28 F.C.C Rcd. at 6583. *See also Hossfeld v. Am. Fin. Sec. Life Ins. Co.,* 544 F. Supp. 3d 1323, 1331–32 (S.D. Fla. 2021) (a TCPA defendant "cannot be directly liable for calls made by third parties"); *Metzler v. Pure Energy USA LLC*, 2023 WL 1779631, at *6 (S.D.N.Y. Feb. 6, 2023) (TCPA plaintiffs must "allege facts from which the Court can plausibly infer that [d]efendant has direct liability, even if it is also plausible that a third party made the call").

---

[6] While various provisions of the TCPA use the terms "make" or "initiate" somewhat interchangeably, courts evaluating and ultimately dismissing conclusory direct TCPA liability claims like Plaintiff's here (including those cited above and below, among many others) have uniformly held that "make" or "initiate" in this context means to "physically" place the calls or send the texts at issue. *See, e.g., Meeks v. Buffalo Wild Wings, Inc.,* 2018 WL 1524067, at *3–5 (N.D. Cal. Mar. 28, 2018); *Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at *5 (W.D. Wash. Mar. 27, 2023).

Put differently, for direct TCPA liability to attach in this case, Plaintiff must plausibly allege that DXL <u>itself</u>, and not a third party, physically sent (or "made" or "initiated") <u>each</u> text message at issue <u>directly</u> to his cell number. *See, e.g., Carson,* 2022 WL 2954327, at *5 (dismissing where the complaint "d[id] not plausibly allege that [the defendant] sent any text messages" and did not "put forth an alternate theory of liability" such as vicarious liability); *Belleville,* 2024 WL 2342337, at *4 (recommending dismissal where the plaintiff did not sufficiently allege that the defendant itself physically initiated each of the subject communications directly to the plaintiff); *Tuso,* 2024 WL 1239474, at *4 (ruling similarly). *See also Brownlee v. Allstate Ins. Co.,* 2021 WL 4306160, at *1–2 (N.D. Ill. Sept. 22, 2021) (dismissing where the allegations did not "allow the Court to reasonably infer that defendant is liable for each call" and holding "[a]t the very minimum, plaintiff must allege in her complaint that defendant made each call that she seeks to hold it [directly] liable for.").

Further, federal district courts have also widely recognized that bare conclusions lacking in specific factual support will not suffice to state a plausible direct TCPA liability theory. *See, e.g., Belleville,* 2024 WL 2342337, at *4 (recommending dismissal where plaintiff merely alleged "in conclusory fashion that [d]efendant was directly involved in making" the subject calls without sufficient factual support); *Tuso,* 2024 WL 1239474, at *4 (dismissing where the plaintiff's "conclusory statement" as to direct TCPA liability was insufficient); *Matthews v.*

*Senior Life Ins. Co.*, 2025 WL 1181789, at *3 (E.D. Va. Apr. 22, 2025) (dismissing TCPA claim where complaint contained only conclusory allegations that the calls came "from" the defendant); *Woodard v. Health Ins. All.,* 2024 WL 942629, at *3 (N.D. Ill. Mar. 5, 2024) (dismissing on this basis, holding "TCPA actions must allege some facts which are distinguishable from the statutory language of the TCPA itself to state a claim and survive dismissal"); *Aaronson v. CHW Grp., Inc.,* 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019) (dismissing for failure to plausibly allege direct liability where, as here, "plaintiff's allegations d[id] not show plausibly that defendant actually, physically initiated the telephone calls at issue").

Here, Plaintiff alleges that DXL either "delivered, or caused to be delivered" the alleged text messages to his cell phone. *See, e.g.,* Dkt. 1 ¶¶ 2, 5, 12, 17, 21, 28, 39, 56. In other words, what Plaintiff is really alleging, at bottom, is either DXL itself "delivered" the subject text messages or "caused" an unidentified third-party "telemarketer" to deliver them. There are no other facts pled from which the Court could infer who physically sent the text messages. This equivocal and conclusory "either/or" pleading approach has been widely rejected by federal district courts in the TCPA context. *See, e.g., Dobronski v. Russo*, 2024 WL 4363118, at *5 (E.D. Mich. Sept. 30, 2024) (dismissing, holding that a plaintiff "simply alleg[ing] that 'Defendants or Defendants' agent' initiated calls" to him was insufficient to plead a theory of TCPA liability); *Brown v. Nano Hearing Tech OPCP, LLC*, 2024 WL

3367536, at *3 (S.D. Cal. July 9, 2024) (dismissing where plaintiff concluded the caller's "numbers belonged to [defendant] Nano or Nano's agent," without factual support demonstrating the defendant itself physically placed any call).

Further, the sole factual allegation connecting DXL to the subject text messages is that DXL's products are referenced in the copy. *See* Dkt. 1 ¶ 13. However, "[m]erely offering a good or service for sale does not mean that a retailer [physically] initiates the marketing calls for that product" for direct TCPA liability. *Wick v. Twilio Inc.,* 2017 WL 2964855, at *3 (W.D. Wash. July 12, 2017); *see also Bennett v. Celtic Ins. Co.,* 2022 WL 865837, at *3 (N.D. Ill. Mar. 23, 2022) ("[A] defendant 'generally does not [physically] initiate calls [under the TCPA] placed by third-party telemarketers,' even if the third party had acted on its behalf.") (citation omitted). For example, in *Katz v. Caliber Home Loans, Inc.,* the plaintiff argued that he plausibly alleged direct liability because he alleged that the calls came "from" the defendant and "offered the Defendant's services from the Caliber Home Loan Mortgage Refinance Team." 2023 WL 5311488, at *3 (N.D. Tex. Aug. 17, 2023). The court found this sole allegation insufficient to plausibly allege direct liability because plaintiff did not allege critical facts that might suggest that the defendant "took the steps necessary to physically place the phone call," including, for example, whether the phone number belonged to the defendant. In short, the content of the call is not dispositive.[7]

---

[7] While courts do not expect plaintiffs to know ***every detail*** to support a TCPA liability

This makes logical sense and is consistent with how federal courts have historically applied the *Iqbal*/*Twombly* pleading standard in TCPA cases. Indeed, calls initiated by a third-party vendor would naturally identify the defendant by name or sell its products, and thus the defendant may have "caused" those communications to be initiated in a technical sense, as Plaintiff alleges here. *See, e.g.,* Dkt. 1 ¶¶ 2, 5, 12, 17, 21, 28, 39, 56. Such calls are not "physically placed" by the defendant for direct liability purposes. *See Bennett,* 2022 WL 865837, at *3. In short, there must be a "direct connection between a person or entity and the making of a call" for direct TCPA liability; indirect connections will not suffice. *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, 7980 (2015). No such "direct connection" was alleged here. Thus, the Complaint should be dismissed on this basis,

Lastly, despite including legal buzzwords in his Complaint vaguely suggestive of possible third party involvement as noted above, Plaintiff does not assert any factual allegations in his Complaint remotely supporting an inference that DXL was in a common law agency relationship with any third party that texted him, let alone that DXL had specific "control" over the "manner and means" of any third party caller's

---

theory at the pleadings stage, all plaintiffs must still adequately plead plausible facts supporting direct (or, alternatively, vicarious) TCPA liability without the benefit of discovery to avoid a dismissal under Rule 12(b)(6). *See, e.g., Hurley v. Messer*, 2018 WL 4854082, at *4 (S.D.W.Va. Oct. 4, 2018) (dismissing on these bases, noting that "allowing discovery where [p]laintiff has failed to allege a plausible claim would be directly contrary to the mandates of *Iqbal* and *Twombly*"). In short, as a party to these calls, plaintiffs can easily provide greater detail to properly allege direct TCPA liability without discovery. *See Matthews*, 2025 WL 1181789, at *3.

telemarketing campaign (which is the well-established touchstone of vicarious liability in a TCPA case and must also be adequately pled in all cases) even in conclusory fashion. *See, e.g., Cunningham v. Daybreak Solar Power, LLC*, 2023 WL 3985245, at *2 (N.D. Tex. June 13, 2023); *Rogers*, 2023 WL 2646468, at *6 (dismissing on this basis where the plaintiffs omitted facts supporting an inference of such specific "control"). Thus, Plaintiff's Complaint should also be dismissed on vicarious TCPA liability grounds. *See, e.g., Tuso*, 2024 WL 1239474, at *3-4 (dismissing on this basis where plaintiff did not properly allege common law agency for vicarious TCPA liability); *Abramson v. 1 Glob. Capital, LLC*, 2015 WL 12564318, at *3 (S.D. Fla. Sept. 23, 2015) (same); *Carson*, *supra*.

## C.     The Complaint Should Also Be Dismissed Under Rule 12(b)(6) Because It Lacks Facts Supporting Key Elements of a DNC Claim.

Beyond the threshold defects above, which by themselves are fatal and warrant its complete dismissal, Plaintiff's Complaint should also be dismissed because it lacks sufficient plausible facts supporting at least three key elements of his DNC claim.

**First**, to survive dismissal, Plaintiff must plead sufficient non-conclusory facts suggesting his receipt of an actionable "telephone solicitation." To meet federal pleading standards, "[c]all recipients must do more than allege the calls in question were telephone solicitations" to state such a claim. *Weingrad v. Top Healthcare Options Ins. Agency Co.*, 2024 WL 4228149, at *4 (E.D. Pa. Sept. 17, 2024). The term

"telephone solicitation" is specifically defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(15). However, a telephone solicitation expressly "does ***not*** include a call or message [t]o any person with that person's express invitation or permission, [or] [t]o any person with whom the caller has an established business relationship." 47 C.F.R. § 64.1200(f)(5)[8] & (f)(15) (emphasis added). While Plaintiff contends he did not give his "prior express consent or permission" or "request" the subject texts, Plaintiff notably fails to plead facts to support the lack of an established business relationship with DXL. Dkt. 1 ¶¶ 17-18. Absent such an allegation, he has not plausibly alleged he received a "telephone solicitation" under the TCPA. *See Gillam v. Reliance First Cap., LLC*, 2023 WL 2163775, at *3 (E.D.N.Y. Feb. 22, 2023) (dismissing DNC claim for failure to plead lack of prior express invitation or permission or established business relationship).

*Gillam* is instructive. There, the plaintiff alleged a DNC claim, but failed to allege that he did not previously invite or permit the defendant to call him and, critically for purposes here, that he and the defendant lacked an "established business

---

[8] "[E]stablished business relationship" is defined to include "a prior or existing relationship…on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party." 47 C.F.R. § 64.1200(f)(5).

relationship" prior to the receipt of any calls. *Id*. The same deficiency exists here.

**Second**, the TCPA's National DNC Registry provisions apply only to "residential telephone subscribers." 47 U.S.C. § 227(c)(5). To survive dismissal, Plaintiff must allege ***facts*** showing that the phone number is ***actually used*** for "residential" purposes. *See, e.g., Cunningham v. Rapid Capital Funding, LLC/RCF,* 2017 WL 3574451, at *3 (M.D. Tenn. July 27, 2017), *report and rec. adopted,* 2017 WL 3776165 (Aug. 31, 2017) (dismissing); *see also Morgan v. U.S. Xpress, Inc.,* 2018 WL 3580775, at *2 (W.D. Va. July 25, 2018) (dismissing similar TCPA claim, holding plaintiff's characterizations that her number is a "residential" line "are not factual allegations, but legal terms drawn from the operative statute"). This is true even if the phone number is allegedly on the National DNC Registry. *See, e.g., Smith v. Vision Solar LLC*, 2020 WL 5632653, at *1 (E.D. Pa. Sept. 21, 2020*)* (dismissing where plaintiff did not allege the "cell phone line in question is his residential phone, as required"); *Hicks v. Alarm.com Inc*., 2020 WL 9261758, at *5 (E.D. Va. Aug. 8, 2020) ("Plaintiff argues at length that cellular phone numbers are eligible for listing on the Do Not Call registry … but his argument never returns to the facts of ***this*** case or the use of his phone.") (emphasis original).[9] Indeed, "[t]hese are facts that are easily within the knowledge of [Plaintiff] and can be pleaded to remove any doubt about …

---

[9] *See also Rogers*, 2023 WL 2646468, at *6; *Cunningham v. Politi,* 2019 WL 2517085, at *4 (E.D. Tex. Apr. 30, 2019), *report and rec. adopted*, 2019 WL 2524737 (June 19, 2019); *Gillam*, 2023 WL 2163775, at *4 (all dismissing TCPA claims on this basis).

whether [their] number[] [is] for residential use." *Rogers*, 2023 WL 2646468, at *2.

Moreover, courts have recognized that whether someone is a "residential telephone subscriber" within the meaning of the TCPA's DNC rules depends on certain conditions, such as whether the number "is the ***primary means of reaching the individual at their residence—that is, there is no other landline or phone at their residence*** which is instead the primary means of reaching them." *Mantha v. QuoteWizard.com*, 2022 WL 325722, at *6 (D. Mass. Feb. 3, 2022) (emphasis added).

Here, Plaintiff does not plausibly allege that the subject phone number is the primary means of reaching him at his residence. *Id.*; *see also* Dkt. 1 ¶ 8. Plaintiff's generic allegation that he uses his cellular telephone as "a personal residential telephone number" is also insufficient, standing alone, to support that the cellular telephone is a "residential" number. *See, e.g., Hicks*, 2020 WL 9261758, at *5 (dismissing TCPA case where plaintiff alleged his cell phone number was "not associated with a business and is for personal use"); *Rogers,* 2023 WL 2646468, at *4 (holding alleged "personal" use of the subject number was insufficient to plead this element); *Gillam,* 2023 WL 2163775, at *4 (ruling similarly). Because Plaintiff fails to plausibly allege that he qualifies as a "residential telephone subscriber" within the TCPA's definition, his DNC claim must be dismissed.

**Third**, even if Plaintiff had plausibly alleged that he is a "residential telephone subscriber" who received a "telephone solicitation" (he has not), Section 227(c)(5)

provides a private right of action only to those "residential telephone subscribers" that have received more than one telephone solicitation more than 31 days after registering **his or her** telephone number on the National DNC Registry. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c). Plaintiff does not allege **he** is the one that registered the subject number on the National DNC Registry. Rather, he alleges that the subject number "has been registered on the DNC Registry since August 13, 2015"—nearly ten years before he became the "regular and sole user" of the subject phone number. *See* Dkt. 1 ¶¶ 8, 11 (alleging Plaintiff obtained the number on March 6, 2025). Plaintiff also suggests this phone number was reassigned, meaning the prior subscriber likely completed this registration. *See id*. ¶ 15 (alleging the subject text messages "were intended for someone other than" Plaintiff).

However, when a reassignment occurs, the Federal Trade Commission **removes the phone number from the Registry**. *See* https://consumer.ftc.gov/articles/national-do-not-call-registry-faqs ("Do I need to take my old phone number off the list when I get a new number? No. The system removes numbers automatically when they're disconnected and reassigned.") (last visited July 29, 2025). Plaintiff is not entitled to the benefits of the prior subscriber's registration. *See, e.g., Rogers*, 2023 WL 2646468, at *4 (dismissing where plaintiffs pled their numbers were registered on the Registry but not who registered them, noting that "the numbers could have been registered by previous owners of those numbers rather than by [p]laintiffs

themselves" and that such "facts that are easily within the knowledge of Plaintiffs and can be pleaded to remove any doubt about whether [p]laintiffs … actually registered their own numbers on the DNC list").

Consequently, Plaintiff does not meet the necessary requirements to bring a TCPA claim under Section 227(c)(5). These deficiencies likewise warrant dismissal.

### D. Alternatively, Plaintiff's Facially Uncertifiable Class Allegations Should Be Stricken Under Rules 12(f) and/or 23.

The Supreme Court has held that "[s]ometimes the issues are plain enough from the pleadings" to determine that a case should not proceed as a class action. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *see also Lawson v. Life of the S. Ins. Co.,* 286 F.R.D. 689, 695 (M.D. Ga. 2012). In this regard, courts in this Circuit have recognized that they may (and, indeed, ***should*** in appropriate cases) strike faulty class allegations at the pleadings stage under Rule 12(f) where, as here, it is apparent from the face of the complaint that the proposed classes are not certifiable under Rule 23 as pled. *See, e.g., Lawson,* 286 F.R.D. at 700-01; *Foxx v. Ocwen Loan Servicing, LLC*, 2012 WL 2048252, at *9-10 (M.D. Fla. June 6, 2012); *see also Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999, 1006 (11th Cir. 1997) (recognizing that propriety of class certification may be "readily apparent" from the face of the complaint).

Indeed, federal courts have found proposed classes to be uncertifiable and struck them at the pleadings stage where, as here, common questions of law and fact do not predominate. *See, e.g., Nichols v. eHealthInsurance Serv., Inc*, 2025 WL

689721, at *4 (N.D. Cal. Mar. 3, 2025); *Lindsay Transmission, LLC v. Office Depot, Inc*., 2013 WL 275568, at *4-5 (E.D. Mo. Jan. 24, 2013).

As applied here, Plaintiff's proposed class definition would require individualized determinations on key issues, including whether an individual is a "residential telephone subscriber" or had an "established business relationship" with DXL, which demonstrates that common questions of law and fact would not predominate, as required by Rule 23(b)(3). To meet this requirement, common questions must "present a significant aspect of the case" and "can be resolved for all members of the class in a single adjudication." *Bacon v. Stiefel Lab'ys, Inc.*, 275 F.R.D. 681, 695 (S.D. Fla. 2011) (quoting *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1022 (9th Cir. 1998)). "[P]redominance is lacking" where, as here, "whether the calls were consented to—a threshold issue—is not subject to generalized proof." *Newhart v. Quicken Loans Inc.*, 2016 WL 7118998, at *2 (S.D. Fla. Oct. 12, 2016).

Along those lines, courts routinely deny class certification in TCPA cases on predominance grounds where individualized factual determinations would be needed. *See, e.g., New Concept Dental v. Dental Res. Sys., Inc*., 2020 WL 3303064, at *9–10 (S.D. Fla. Mar. 3, 2020); *see also Balthazor v. Cent. Credit Servs., Inc.,* 2012 WL 6725872, at *4 (S.D. Fla. Dec. 27, 2012); *Tillman v. Ally Fin. Inc.,* 2017 WL 7194275, at *7 (M.D. Fla. Sept. 29, 2017). Courts also strike class allegations at the pleadings stage and/or grant pre-discovery motions to deny certification, in TCPA cases where

individualized determinations of "consent" are needed. *See, e.g., Pepka v. Kohl's Dep't Stores, Inc.*, 2016 WL 8919460, at *4 (C.D. Cal. Dec. 21, 2016); *Dorfman v. Albertson's LLC*, 2020 WL 86192, at *5 (D. Idaho Jan. 7, 2020).

As applied here, it is readily apparent that common questions of law and fact do not predominate. For example, while Plaintiff's proposed class does not directly use the word "consent," the TCPA's DNC provisions only prohibit "telephone solicitations," as noted above. In that regard, a call does <u>not</u> qualify as a "telephone solicitation" where (among other things) the plaintiff gave their "prior express invitation or permission" – *i.e.,* their ***consent*** — to receive the call. 47 U.S.C. § 227(c)(5); 47 C.F.R. §§ 64.1200(c)(2) & (f)(15). How the putative class members may have provided their "prior express invitation or permission" to be contacted may differ from person to person. Therefore, whether any text messages were sent without the "prior express invitation or permission" of Plaintiff and the class members is <u>not</u> a common question that can be resolved by generalized proof across the entire class in a single adjudication, and individualized inquiries into these key issues will be needed.

The same would be true for persons with an "established business relationship" with the caller, which is also a context-dependent issue that can vary by individual and can prevent calls from qualifying as "telephone solicitations." 47 C.F.R. § 64.1200(c)(2); *see also* 47 C.F.R. § 64.1200(f)(5) (defining "established business relationship"); *Lindsay*, 2013 WL 275568, at *4-5 (holding "the absence of prior

-24-

consent and the absence of a prior business relationship" are individualized issues).

Individualized inquires will also be required to determine whether each class member utilized their number for "residential" purposes—yet another key element of any DNC claim. *See*, *e.g.*, *Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 135 (N.D. Tex. 2020) (holding that questions such as residential status "require 'evidence that varies from member to member'"); *Payne v. Sieva Networks, Inc.*, 347 F.R.D. 224, 228 (N.D. Cal. 2024) (denying class certification without evidence where "[r]esolving each phone number's residential status requires a fact-intensive inquiry"). Plaintiff's class definition should be stricken on this additional basis.[10]

## V.    **CONCLUSION**

For these reasons, the Complaint should be dismissed under Rule 12(b)(6) or, alternatively, the improper class allegations identified above should be stricken.

Dated: August 4, 2025                     Respectfully submitted,


                                          By: */s/ Spencer M. Stephens*
                                          _____

                                          **BRADLEY ARANT BOULT CUMMINGS LLP**
                                          Nancy H. Baughan (Georgia Bar No. 042575)
                                          Spencer M. Stephens (Georgia Bar No. 920774)
                                          nbaughan@bradley.com
                                          smstephens@bradley.com

---

[10] With Plaintiff's proposed class definitions appropriately stricken for the myriad reasons above, all of Plaintiff's remaining class-related allegations (*e.g.*, Dkt. 1 ¶¶ 22-48) are superfluous and immaterial and should be stricken as well. *See Lawson*, 286 F.R.D. at 701 (striking all class allegations); *Blount v. D. Canale Beverages, Inc.*, 2003 WL 22890339, at *8 (W.D. Tenn. July 23, 2003) (striking under Rule 12(f) as "immaterial" after dismissal of underlying claims).

Promenade Tower, Suite 2100
1230 Peachtree Street NE
Atlanta, GA 30309
(404) 868-2100
(404) 868-2010 (facsimile)

**MANATT, PHELPS & PHILLIPS, LLP**
Stephen D. Libowsky (GA Bar No. 451965)
A. Paul Heeringa (*admitted pro hac vice*)
151 N. Franklin Street, Suite 2600
Chicago, Illinois 60606
Tel: (312) 529-6300
Email: slibowsky@manatt.com
          pheeringa@manatt.com

*Counsel for Defendant Destination XL Group, Inc.*


## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), the undersigned hereby certifies that this document has been prepared in accordance with Local Rule 5.1(C).

Dated:  August 4, 2025          Respectfully submitted,

*/s/ Spencer M. Stephens*
Spencer M. Stephens

*Counsel for Defendant Destination XL Group, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I filed the foregoing document electronically on the Court's CM/ECF docket on August 4, 2025 which served same electronically upon all counsel of record.

Dated:  August 4, 2025          Respectfully submitted,

<u>*/s/ Spencer M. Stephens*          </u>
Spencer M. Stephens

*Counsel for Defendant Destination XL Group, Inc.*