# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| ETHAN RADVANSKY, *on behalf of himself and others similarly situated*, | ) |
| | ) Civil Action No.: 1:25-cv-02777 |
| | ) |
| | )     Class Action Complaint |
| Plaintiff, | ) |
| | )     Jury Trial Demanded |
| v. | ) |
| | ) |
| DESTINATION XL GROUP, INC. | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## PLAINTIFF'S OPPOSITION TO THE
## <u>DEFENDANT'S MOTION TO DISMISS</u>

**Table of Contents**

Introduction ................................................................................................ 1

Background ................................................................................................ 3

Argument

I.  Text Messages Are "Calls" Under the TCPA, As Nearly Every Court to

Consider the Question Has Held ......................................................... 5

  a.  Section 227(c) authorizes the FCC to prohibit unwanted telephone

solicitations of all kinds, including text messages ................................. 7

  b.  Just as § 227(c)'s substantive provisions allow the FCC to regulate text

messages, the private right of action in § 227(c)(5) authorizes suit when those

rules are violated ................................................................ 9

  c.  Even if the statute left room to doubt that a text message can be a

violation (which it doesn't), the FCC's longstanding interpretation of the word

"call" should still carry the day ................................................ 13

  d.  Furthermore, Defendant's argument asks this Court to apply the

incorrect standard of review ................................................... 17

II.  Plaintiff Plausibly Pleads Direct Liability ................................... 24

III.  The Complaint Alleges Every Element of a Do Not Call Claim ........... 25

IV.  The Class Allegations Should be Addressed on a Full Record, not

Determined Prior to any Discovery ................................................ 30

Conclusion ................................................................................................ 34

# Table of Authorities

**Cases**

**Abramson v. Josco Energy USA, LLC, No. 2:21-cv-1322, 2022 U.S. Dist. LEXIS 237792 (W.D. Pa. Aug. 1, 2022)** ............................................................... 24

**Ashland Hosp. Corp. v. Serv. Employees Int'l Union, 708 F.3d 737 (6th Cir. 2013)** ............................................................................................................. 21

**Barton v. Temescal Wellness, LLC, 525 F. Supp. 3d 195 (D. Mass. 2021)**....... 6

**Barr v. Am. Ass'n of Political Consultants, Inc., 140 S. Ct. 2335 (2020)** ......... 6

**Berman v. Freedom Fin. Network, LLC, 400 F. Supp. 3d 964 (N.D. Cal. 2019)** ....................................................................................................................... 32

**Breda v. Cellco P'ship, 934 F.3d 1 (1st Cir. 2019)** ................................................ 5

**Callier v. Am.-Amicable Life Ins. Co. of Tex., No. EP-22-CV-00018-FM, 2022 WL 17732717 (W.D. Tex. Oct. 18, 2022)** ........................................................ 29

**Campbell-Ewald Co. v. Gomez, 577 U.S. 153 (2016)** ........................................ 5

**Charvat v. Echostar Satellite, LLC, 630 F.3d 459 (6th Cir. 2010)** ................. 19

**Charvat v. Home Depot U.S.A., Inc., 2017 U.S. Dist. LEXIS 227309 (N.D. Ga. 2017)** ............................................................................................................. 25

**Citizens Telecomms. Co. of Minn., LLC v. FCC, 901 F.3d 991 (8th Cir. 2018)** ....................................................................................................................... 21

**Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833 (1986)** ............ 7

**Davis v. CVS Pharmacy, Inc., No. 4:24-cv-477-AW-MAF, 2025 U.S. Dist.**

LEXIS 167366 (N.D. Fla. Aug. 26, 2025) ........................................................ 6, 18

Davis v. HSBC Bank Nev., N.A., 691 F.3d 1152 (9th Cir. 2012) ...................... 8

D.G. v. William W. Siegel & Assocs., 791 F. Supp. 2d 622 (N.D. Ill. 2011) .... 29

Doyle v. JTT Funding, Inc., No. LACV1806145JAKASX, 2019 WL 13037025

(C.D. Cal. Dec. 2, 2019) ...................................................................................... 27

Drazen v. Pinto, 74 F.4th 1336 (11th Cir. 2023) .......................................... 5, 24

Fillichio v. M.R.S. Assocs., Inc., No. 09-61629-CIV, 2010 WL 4261442 (S.D.

Fla. Oct. 19, 2010) ............................................................................................... 21

Forest Grove Sch. Dist. v. T.A., 557 U.S. 230 (2009) ......................................... 7

Gadelhak v. AT&T Servs., 950 F.3d 458 (7th Cir. 2020) .................................... 5

Gager v. Dell Fin. Servs., LLC, 727 F.3d 265 (3d Cir. 2013) ........................... 24

Grant v. Regal Auto. Grp., 2020 U.S. Dist. LEXIS 248347 (M.D. Fla. July 30,

2020) ..................................................................................................................... 23

Hall v. Smosh Dot Com, Inc., 72 F.4th 983 (9th Cir. 2023) ................................ 5

Herrera v. JFK Med. Ctr. Ltd. P'ship, 648 F. App'x 930 (11th Cir. 2016) .... 30

Hodgin v. Parker Waichman LLP, 2015 WL 13022289 (W.D. Ky. Sept. 30,

2015) ..................................................................................................................... 27

Hooters of Augusta, Inc. v. Am. Glob. Ins. Co., 272 F. Supp. 2d 1365 (S.D. Ga.

2003) ..................................................................................................................... 24

Hughes v. Circle K Stores, Inc., 740 F. Supp. 3d 721 (C.D. Ill. 2024) ............. 32

*Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303 (11th Cir. 2025) ......................... 5

*Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365 (6th Cir. 2015) ........... 22

*Klassen v. Solid Quote LLC*, No. 23-CV-00318-GPG-NRN, 2023 WL 7544185
(D. Colo. Nov. 14, 2023) ....................................................... 29

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019) ................. 25

*Krakauer v. Dish Network, LLC*, 311 F.R.D. 384 (M.D.N.C. 2015) ............... 25

*LoanDepot.com LLC, Rosenberg v.*, 435 F. Supp. 3d 308 (D. Mass. 2020) .... 31

*Lopez v. Consumer Safety Tech., LLC*, No. 8:24-cv-150-WFJ-AAS, 2024 U.S.
Dist. LEXIS 84873 (M.D. Fla. May 10, 2024) ...................................... 32

*Lourie v. Papa John's Int'l, Inc.*, 2024 U.S. Dist. LEXIS 119679 (N.D. Ga.
2024) .......................................................................... 28

*Lyman v. QuinStreet, Inc.*, No. 23-cv-5056, 2024 WL 3406992 (N.D. Cal. July
12, 2024) ...................................................................... 16

*Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110 (11th Cir. 2014) . 19

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146
(2025) ......................................................................... 2

*Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036 (9th Cir. 2012) ... 32

*Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012) ...................................... 24

*Nat'l Cable & Telecom. Ass'n v. FCC*, 567 F.3d 659 (D.C. Cir. 2009) ............. 9

*New Prime Inc. v. Oliveira*, 586 U.S. 105 (2019) ................................................ 12

Olney v. Progressive Cas. Ins. Co., 993 F. Supp. 2d 1220 (S.D. Cal. 2014) .... 29

Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75 (1998) ...................... 9

Payne v. Sieva Networks, Inc., 347 F.R.D. 224 (N.D. Cal. 2024) ..................... 34

Phillips v. Mozes, Inc., No. 2:12-CV-04033-JEO, 2014 WL 12589671 (N.D. Ala. Sept. 3, 2014) ........................................................................................ 27

Prometheus Radio Project, FCC v., 592 U.S. 414 (2021) ................................ 17

Rombough v. Robert D. Smith Ins. Agency, Inc., No. 22-CV-15-CJW-MAR, 2022 WL 2713278 (N.D. Iowa June 9, 2022) ..................................................... 28

Rosenberg v. LoanDepot.com LLC, 435 F. Supp. 3d 308 (D. Mass. 2020) .... 31

Salazar v. Nat'l Basketball Ass'n, 118 F.4th 533 (2d Cir. 2024) ....................... 9

Satterfield v. Simon & Schuster, Inc., 569 F.3d 946 (9th Cir. 2009) ............... 8

Saunders v. Dyck O'Neal, Inc., 319 F. Supp. 3d 907 (W.D. Mich. 2018) ........ 22

Schaevitz v. Braman Hyundai, Inc., 437 F. Supp. 3d 1237 (S.D. Fla. 2019) ... 21

Seven Cty. Infrastructure Coal. v. Eagle Cty., 145 S. Ct. 1497 (2025) ........... 17

Smith v. Am.-Amicable Life Ins. Co. of Tex., No. CV 22-333, 2022 WL 1003762 (E.D. Pa. Apr. 4, 2022) ........................................................................ 24

Stemke v. Marc Jones Constr., LLC, 2021 U.S. Dist. LEXIS 181916 (M.D. Fla. 2021) .............................................................................................................. 31

Tsolumba v. SelectQuote Ins. Servs., No. 5:22-CV-00712, 2023 WL 6146644 (N.D. Ohio Sept. 20, 2023) ............................................................................... 27

Van Patten v. Vertical Fitness Grp., LLC, 847 F.3d 1037 (9th Cir. 2017) ..... 23

Watson v. Navient Sols., LLC, 2022 WL 4586407 (S.D.N.Y. Sept. 29, 2022) . 29

Williams v. Myler Disab., LLC, No. 3:20-cv-00275-FDW-DCK, 2020 U.S. Dist. LEXIS 211914 (W.D.N.C. Nov. 12, 2020) ....................................................... 7, 19

Wilson v. Skopos Fin., LLC, No. 6:25-cv-376, 2025 WL 2029274 (D. Or. July 21, 2025) ................................................................................................... 9, 23

Zyburo v. NCSPlus, Inc., 44 F. Supp. 3d 500 (S.D.N.Y. 2014) ...................... 32

## Statutes and Regulations

Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ............... passim

TRACED Act, Pub. L. No. 116-105, 133 Stat. 3274 (2019) ........................ 7, 19

47 C.F.R. § 64.1200 ................................................................................. passim

## Other Authorities

In re Rules & Regulations Implementing the TCPA, 18 F.C.C. Rcd. 14014 (2003) .................................................................................................... 1, 13

In re Targeting & Eliminating Unlawful Text Messages, 38 F.C.C. Rcd. 12247 (2023) .................................................................................................... 1, 16

Paging Network, Inc., Annual Report (1993) ...................................... 11

## Introduction

Destination XL Group, Inc. ("DXL") moves to dismiss, arguing the DNC rules don't cover texts, Plaintiff hasn't plausibly linked DXL, and the class allegations fail. The motion should be denied.

The Telephone Consumer Protection Act's provisions authorizing a nationwide Do Not Call List, 47 U.S.C. § 227(c), empower the FCC to establish by regulation "a list of telephone numbers of residential subscribers who object to receiving telephone solicitations," *id.* § 227(c)(3), and to prohibit telemarketers from "making or transmitting a telephone solicitation" to phone numbers on that list. *Id.* § 227(c)(3)(F). For decades, the FCC has consistently made those protections available to all residential phone subscribers, regardless of whether their phone numbers are associated with landline phones or cell phones. *See* 47 C.F.R. §§ 64.1200(c)(2), (e); *In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14037 ¶¶ 33–36 (2003). The FCC has also determined that those provisions authorize it to prohibit unsolicited text messages, not just voice calls. *See* 47 C.F.R. § 64.1200(e); 18 F.C.C. Rcd. at 14115; *In re Targeting and Eliminating Unlawful Text Messages*, 38 F.C.C. Rcd. 12247, 12256–57 (2023).

In the decades since FCC established the Do Not Call List and began enforcing those protections, over 200 million phone subscribers have come to rely on them. *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 203–204 & n.5

(S.D.N.Y. 2024). Plaintiff Ethan Radvansky is one of them. So, when Defendant Destination XL sent him telemarketing texts in willful violation of the FCC's rules even though he previously asked them to stop, he brought this lawsuit to vindicate those rights and put a stop to Destination XL's unwelcome and intrusive marketing practices.

Destination XL has now filed a Motion to Dismiss, and it's one that makes a big ask of this court. The Supreme Court recently held that courts are not automatically bound by the FCC's interpretations, and should make their own assessment of what the TCPA means. *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 152 (2025). So Destination XL therefore asks this court to reject the FCC's longstanding interpretations and hold that the Do Not Call List protects only voice calls, upending protections for potentially hundreds of millions of Americans who receive unwanted and non-consensual text messages.

This court should decline that request. A fresh read of the statutory text confirms that cell phone subscribers are eligible for the Do Not Call List, and that listing their number protects them from intrusive text messages, not just voice calls. Destination XL asks this Court to substitute its judgment for Congress's and the FCC's largely because in 1991 text messages didn't exist yet. But that is not how statutory interpretation works, and it's contrary to the plain meaning of the terms Congress used. And even if the statute itself weren't clear on this, later

enactments and multiple express delegations of discretion to the FCC show that Congress would have intended the FCC's consistent and well-reasoned judgment to win out. Also, the Plaintiff plainly alleges that the Defendant sent the texts at issue.

Plaintiff's allegations also easily satisfy Rule 12(b)(6). He alleges that DXL delivered multiple unsolicited text messages to his personal, residential number despite its registration on the National Do Not Call Registry and despite his lack of consent or any prior relationship with DXL. Those allegations, taken as true, state a plausible claim under §227(c). Whether DXL sent the texts directly or through an agent is a factual question for discovery, not a basis for dismissal.

Finally, Defendant's attempt to strike Plaintiff's class allegations at the pleadings stage is premature and contrary to Rule 23 jurisprudence. Courts overwhelmingly hold that issues of predominance and commonality must be assessed on a developed factual record, not on the face of a complaint. Plaintiff's class allegations track the statute and are more than sufficient to proceed to discovery.

The Court should deny Defendant's motion in its entirety.

## Background

Plaintiff Ethan Radvansky brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, on behalf of himself and a putative

class of consumers who received unsolicited marketing text messages from or on behalf of Defendant Destination XL Group, Inc. ("DXL") despite their registration on the National Do Not Call Registry ("DNC Registry")

Plaintiff alleges that he is the regular and sole user of cellular telephone number ending in 7404, which he uses exclusively as his personal residential line and not for business or commercial purposes (ECF No. 1 ¶¶ 8–10). That number has been registered on the National DNC Registry since August 13, 2015 (ECF No. 1 ¶ 11). Despite this registration, DXL delivered least six marketing text messages to Plaintiff more than thirty days after the number was registered (ECF No. 1 ¶¶ 12–13). Plaintiff never provided his prior express consent or permission for these messages and never requested promotional materials from DXL (ECF No. 1 ¶¶ 17–18). The texts, which promoted DXL's goods and services, were intended for someone other than Plaintiff and invaded his privacy, intruded on his daily life, and caused nuisance harms (ECF No. 1 ¶¶ 15, 20–21). Plaintiff further alleges that DXL knew, or should have known, that his number was listed on the DNC Registry (ECF No. 1 ¶ 19).

On behalf of himself and others similarly situated, Plaintiff asserts a single cause of action for violation of §227(c)(5) and 47 C.F.R. § 64.1200(c), seeking statutory and treble damages, injunctive relief, and class-wide remedies (ECF No. 1 ¶¶ 49–61).

## Argument

**I.    Text Messages Are "Calls" Under the TCPA, As Nearly Every Court to Consider the Question Has Held.**

Defendant contends that a text message is not a "call" under the TCPA and that the FCC overstepped when it interpreted a "call" to include text messages. The Supreme Court, every Circuit Court, and the majority of district courts, even after *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.,* 145 S. Ct. 2006 (2025), disagree with Defendant's position. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call'".); *Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303, at n.2 (11th Cir. 2025) ("We use the terms 'robocalls' and 'robotexts' as shorthand for calls and texts made 'using any automatic telephone dialing system or an artificial or prerecorded voice'—*i.e.*, the calls and texts that the TCPA regulates....We note that even though the statute on its face does not mention text messages, the FCC—by regulation—has interpreted the word 'call' to include text messages."); *Drazen v. Pinto*, 74 F.4th 1336, 1346 (11th Cir. 2023) ("we hold that the receipt of an unwanted text message causes a concrete injury"); *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 986 (9th Cir. 2023); *Breda v. Cellco Partnership*, 934 F.3d 1, n.1 (1st Cir. 2019) ("The TCPA also applies to . . . text messages."); *Gadelhak v. AT&T Servs.*, 950 F.3d 458, 463 (7th Cir. 2020) ("We therefore agree with the Second and Ninth Circuits that unwanted

text messages can constitute a concrete injury-in-fact.").

Defendant will likely rely on the recent order in *Davis v. CVS Pharmacy, Inc.*, No. 4:24-cv-477-AW-MAF, 2025 U.S. Dist. LEXIS 167366 (N.D. Fla. Aug. 26, 2025); one of two cases that refused to apply the above cited longstanding precedent. Contrary to what the court held in *Davis*, the Supreme Court's holding in *Campbell-Ewald* is not mere dicta. "The Supreme Court ratified the FCC's interpretation that a text message was a call for the purposes of the TCPA in *Campbell-Ewald v. Gomez* [.]" *Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195, 198 (D. Mass. 2021). Indeed, "it is unlikely that the Court would stay silent about any serious concerns that robotexts were an invalid ground for TCPA recovery in a case construing the same statute." *Id*. at 199. "Furthermore, in the most recent term Justice Kavanaugh's plurality opinion in *Barr* cited the FCC's regulations applying the TCPA to text messages as the current applicable legal standard." *Id*. (citing *Barr v. American Ass'n of Political Consultants, Inc.*, 140 S.Ct. 2335, 2344 n.1, 207 L. Ed. 2d 784 (2020)). "The First, Second, Seventh, Ninth, and Eleventh Circuits have either adopted Judge Ginsburg's remark as black letter law rather than dicta or had already held that the TCPA included text messages before *Campbell-Ewald*." *Id*. at *6 (collecting cases).

"In addition to the Supreme Court and the FCC, *Congress* has also made clear the TCPA's applicability to text messages." *Williams v. Myler Disab., LLC*, No. 3:20-cv-00275-FDW-DCK, 2020 U.S. Dist. LEXIS 211914, at n. 2 (W.D.N.C. Nov.

12, 2020) (emphasis added). Specifically, when Congress amended the TCPA in 2019 with the TRACED Act, it adopted the FCC's interpretation, instructing the FCC to prescribe regulations related to "a call made or *a text message* sent in violation of [227(b).]" 47 § 227(i)(1)(A) (emphasis supplied).

"Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239–40 (2009). "Where, as here, 'Congress has not just kept its silence by refusing to overturn the administrative construction, but has ratified it with positive legislation,' we cannot but deem that construction virtually conclusive." *Commodity Futures Trading Com v. Schor*, 478 U.S. 833, 846 (1986). When Congress amended the TCPA in 2019, not only was it aware that the FCC and every court had interpreted the statute to cover text messages, it *ratified* that interpretation with an explicit reference to text messages in the amendment. Because Congress has spoken directly on the issue, the application of the TCPA to text messages is all but conclusive and reason alone to reject Defendant's position.

### a. *Section 227(c) authorizes the FCC to prohibit unwanted telephone solicitations of all kinds, including text messages.*

The core of § 227(c) is its prohibition on sending "telephone solicitations" to numbers on the Do Not Call List. 47 U.S.C. § 227(c)(1), (3)(F). The statute defines a "telephone solicitation" in relevant part to mean "the initiation of a

telephone *call or message* … which is transmitted to any person." 47 U.S.C.
§ 227(a)(4) (emphasis added). That definition plainly encompasses modern text
messages. As further explained below, the word "call" in the TCPA encompasses
text messages. *See infra*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952
(9th Cir. 2009) ("we hold that a text message is a 'call' within the TCPA"). That
interpretation follows from "the ordinary, contemporary, common meaning of the
verb 'to call.'" *Satterfield*, 569 F.3d at 953–54 & n.3. And even if the word "call"
alone weren't enough, contemporary dictionary definitions of the word "message"
emphasized that it encompassed *all* sorts of communication, both spoken *and*
written. *See* Black's Law Dictionary, 6th Ed. ("any notice, word, or
communication, no matter the mode and no matter how sent, from one person to
another").[1] More generally, the definition of "telephone solicitation" focuses not on
the form of a communication but whether it is made "for the purpose of
encouraging" a commercial transaction. *See, e.g.*, *Hulce v. Zipongo, Inc.*, 132 F.4th
493 (7th Cir. 2025). So Congress referred to "call or message" disjunctively to
broadly capture a wide range of potential communication mediums. *See, e.g.*,
*Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012).

---

[1] *See also, e.g.*, Webster's College Dictionary (1991) ("a communication delivered
in writing, speech, by means of signals, etc."); Oxford English Dictionary, 2d Ed.
(1989) ("a communication transmitted through a messenger or other agency; an oral
or written communication sent from one person to another"); Oxford American
Dictionary (1980) ("a spoken or written communication").

The purpose and structure of the Do Not Call List provisions supports that interpretation. Congress's stated goal was "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). And "a voice message or a text message are not distinguishable in terms of being an invasion of privacy." *Satterfield*, 569 F.3d at 954; *see Wilson v. Skopos Fin., LLC*, No. 6:25-cv-376, 2025 WL 2029274, at *4 (D. Or. July 21, 2025). To be sure, as Destination XL emphasizes, Section 227(c) does not specifically use the words "text messages" or "SMS messages." That is unsurprising, because the TCPA was enacted in 1991, and the first-ever text message wasn't sent until 1992. *See Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015). But as just explained, the statute *does* explicitly cover any "telephone solicitation," which is expressly defined to include any "call *or message*." 47 U.S.C. § 227(a)(4). It is the meaning of those terms that governs, not the specific facts or technology that Congress would have had in mind in 1991. *See Oncale*, 523 U.S. at 79; *Nat'l Cable & Telecom. Ass'n*, 567 F.3d at 665. "The fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth." *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 550 (2d Cir. 2024) (quoting *Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206, 212, (1998)).

### b.  Just as § 227(c)'s substantive provisions allow the FCC to regulate text messages, the private right of action in § 227(c)(5)

9

*authorizes suit when those rules are violated.*

Section 227(c)(5) grants a right of action to enforce the Do Not Call List regulations to any "person who has received more than one telephone call within any 12-month period … in violation of the regulations." 47 U.S.C. § 227(c)(5). That is "a straightforward provision designed to achieve a straightforward result"—to enable "each person to protect his own personal rights" under § 227(c). *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 650 (4th Cir. 2019).

It is well established that the word "call" in the TCPA includes text messages. As the Ninth Circuit has explained, the "ordinary, contemporary, common meaning" of the word "call" is simply "to communicate or try to get into communication with a person by a telephone." *Satterfield*, 569 F.3d at 953–54 & n.3 (quoting Webster's Third New International Dictionary 318 (2002)).[2] Accordingly, the FCC has recognized since 2003 that when the statute says "call," it means not only traditional voice calls but also modern text messages. 18 F.C.C. Rcd. at 14115 ¶ 165 (defining telemarking calls to encompass both).

That meaning of "call" is especially clear in neighboring provisions. Notably, there is only one other reference to "calls" in § 227(c), and it has the same

---

[2] *See also, e.g.*, Webster's College Dictionary (1991) ("to communicate or try to communicate with by telephone"); The New Merriam-Webster Dictionary (1989) ("to get or try to get in communication with by telephone"); Oxford English Dictionary, 2d Ed. (1989) ("a summons or communication by telephone").

breadth as "telephone solicitations." In § 227(c)(1)(D), Congress directed the FCC to assess whether it needed additional statutory authority "to further restrict telephone solicitations, including those *calls* exempted under subsection (a)(3)" (emphasis added). In the original TCPA, subsection (a)(3) contained the statutory definition of "telephone solicitation." *See* Telephone Consumer Protection Act of 1991, Pub. L. 102–243, 105 Stat. 2394, § 3(a). So § 227(c)(1)(D)'s reference to "calls exempted under" the definition of "telephone solicitation" presumably mirrored that definition—which, as explained above, broadly encompasses a "telephone call or message" and thus covers text messages even more clearly than the word "call" standing alone. 47 U.S.C. § 227(a)(4); *see supra*.[3]

Similarly, § 227(b)(1)(A), an autodialer provision, uses the word "call" several times to describe a prohibited transmission to both a "cellular telephone" and "a paging service." A typical paging device in the early 1990s would have displayed an incoming message as written text, usually a phone number to call.[4] So those uses of the word "call" must have encompassed both voice and text

---

[3] Because § 227(c)(1)(D) confirms that the variation between Congress's use of a "call or message" in § 227(a)(4)'s capacious definition and its use of "call" in § 227(c)(5) is immaterial, the one district court that recently relied on this distinction to adopt a restrictive interpretation is unpersuasive. *Contra Davis v. CVS Pharmacy, Inc.*, No. 4:24-cv-477, 2025 WL 2491195, at *2 (N.D. Fla. Aug. 26, 2025).

[4] *See, e.g.*, **Paging Network, Inc., Annual Report, at 8 (1993)**, available at https://digital.library.mcgill.ca/images/hrcorpreports/pdfs/6/639549.pdf (noting that 92 percent of the company's pagers could "transmit a numeric message such as a telephone or account number to the subscriber").

transmissions, too. Destination XL heavily relies on *Jones v. Blackstone Medical Services, LLC*, No. 1:24-cv-1074, 2025 WL 2042764 (C.D. Ill. July 21, 2025), but *Jones* is unpersuasive. There, the court held that a text message could not be a "call" for purposes of § 227(c)(5)'s private right of action because "[t]ext messaging was not an available technology in 1991," and "in today's American parlance, 'telephone call' means something entirely different from 'text message.'" *Id.* at *4.

But that gets statutory interpretation wrong in two important ways. First, as the Supreme Court has warned, "modern intuition" doesn't always match "evidence of a term's meaning at the time of [a statute]'s enactment." *New Prime Inc. v. Oliveira*, 586 U.S. 105, 114 (2019). *Jones* and other cases go astray when they reflexively apply present-day intuitions about how text messages are discussed to language from 1991, before the first text message was ever sent.[5] And second, as explained above, it's irrelevant that Congress didn't have text messages specifically in mind in 1991. *See supra* (citing cases). "The mere fact that Congress did not envision the ubiquitousness of text messaging in 1991 does not mean the FCC's conclusion lacks support." *Wilson,* 2025 WL 2029274, at *4.

---

[5] *Compare, e.g.*, *Davis*, 2025 WL 2491195, at *1 (relying on how "a normal person refers to a text message"), *with* 47 U.S.C. § 227(b)(1)(A)(iii) (using the word "call" to refer to a message sent to a "paging service," the most analogous type of text-message-like communication in 1991).

*Jones* also disregarded the FCC's longstanding interpretation of "call" to include text messages because the FCC, until 2023, had only articulated that interpretation in the context of the statute's autodialer prohibitions. 2025 WL 2042764, at *4–5. But that's unsurprising. The Do Not Call List provisions are built around the defined term "telephone solicitation," so the standalone word "call" is much more extensively used in § 227(b)'s autodialer and robocall prohibitions, or in associated definitional provisions.[6] That's why the FCC first determined that "call" includes text messages in the § 227(b) context, and only more recently memorialized in a formal regulation that "call" has the same meaning in the Do Not Call List context. *See* 47 C.F.R. § 64.1200(e); *In re: Targeting and Eliminating Unlawful Text Messages*, 88 Fed. Reg. 20800, 20802 ¶ 6 (2023); *In re: Targeting and Eliminating Unlawful Text Messages*, 38 F.C.C. Rcd. 12247, 12256–57 ¶ 26 (2023). But that doesn't mean there's any daylight between § 227(b) and § 227(c) on this particular question, and neither *Jones* nor Destination XL identifies any. *See United States v. Paulson*, 68 F.4th 528, 555 (9th Cir. 2023) (absent cause to think otherwise, "a word or phrase is presumed to bear the same meaning throughout a text"). In fact, reading the word "call" differently

---

[6] *See* Telephone Consumer Protection Act of 1991, Pub. L. 102–243, 105 Stat. 2394, § 3(a) (using "call" or "calls" in the original text of 47 U.S.C. §§ 227(a)(1), 227(a)(3), 227(b)(1)(A), 227(b)(1)(B), 227(b)(2)(A), 227(b)(2)(B), 227(c)(1)(D), 227(c)(5), 227(d)(1)(A), 227(d)(3)).

in § 227(c)(5) than in neighboring provisions would make no sense. *See, e.g.*, 38 F.C.C. Rcd. at 12257 (rejecting that "anomalous" interpretation). If Congress intended to cabin § 227(c)(5)'s private right of action to *exclude* text messages, it wouldn't have conveyed that by using a term that elsewhere in the statute *includes* them.

> ### c. Even if the statute left room to doubt that a text message can be a violation (which it doesn't), the FCC's longstanding interpretation of the word "call" should still carry the day.

Since 2003, the FCC held that text messages constitute calls within the meaning of the TCPA. *In Re Rules & Reguls. Implementing Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 (2003) (defining telemarking calls to "encompass[] both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls") (the "2003 Order"). In *Satterfield*, the Ninth Circuit found that the FCC's interpretation was reasonable and consistent with the dictionary's definition of "call," how text messages are sent and used, and the purposes of the TCPA. 569 F.3d at 954.

To be sure, mere ambiguity is no longer automatic cause to defer to an agency. *See Loper Bright*, 603 U.S. at 412–13 (overruling *Chevron*). But courts still defer when a statute "expressly delegate[s] to an agency the authority to give meaning to a particular statutory term," tasks an agency "to fill up the details of a statutory scheme," or tells an agency "to regulate subject to the limits imposed by a

term or phrase that leaves agencies with flexibility, such as 'appropriate' or 'reasonable.'" *Id*. at 395. In that case, a court's role is merely to "fix[] the boundaries" of agency authority and ensure "reasoned decisionmaking" within those outer bounds. *Id.*; *see Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575, 587–88 (6th Cir. 2025).

This case falls at the intersection of *two* such express delegations. Mainly, § 227(c) itself is an express delegation of rulemaking discretion to the FCC: Congress tasked the FCC with evaluating alternative approaches based on (among other things) their "effectiveness in protecting … privacy rights" and their "other advantages and disadvantages." 47 U.S.C. § 227(c)(1)(A). It then told the FCC to make rules "that *the Commission determines* are most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(1)(E) (emphases added). That language grants discretionary authority to "fill up the details," accompanied by "flexibility" to determine what rules will best effectuate the TCPA's goals. *Loper Bright*, 603 U.S. at 395. Congress in 1993 asked the FCC to decide whether cell phone companies are "common carriers" whose subscribers have rights under the TCPA, and the FCC did. *Compare* 47 U.S.C. § 332(a)(1)(A), *with* 47 U.S.C. § 227(c)(3). That expressly delegated the FCC "authority to give meaning to a particular statutory term." *Loper Bright*, 603 U.S. at 395. If Congress didn't speak on this issue, then it clearly looked to the FCC's expert judgment to

supply an answer. *See U.S. Telecom Ass'n v. FCC*, 825 F.3d 674, 718 (D.C. Cir. 2016) (express delegation was evidence that Congress expected telecommunications technology to evolve).

It follows that the way to honor Congress's intent here is to "respect [that] delegation" and affirm the FCC's "reasoned decisionmaking" on this question. *Loper Bright*, 603 U.S. at 395. Recognizing as much, courts have continued to defer to the FCC's well-reasoned decision to allow registration of cell phone numbers, even after *Loper Bright* and *McLaughlin*. *See, e.g.*, *Harriel v. Bealls, Inc.*, No. 8:25-cv-1165, 2025 WL 2379617, at *2 (M.D. Fla. Aug. 15, 2025); *Wilson*, 2025 WL 1784815, at *5; *Lirones*, 2024 WL 4198134, at *7; *Lyman v. QuinStreet, Inc.*, No. 23-cv-5056, 2024 WL 3406992, at *4 (N.D. Cal. July 12, 2024). This court should do the same.

As explained, the FCC is regulating here with discretionary authority expressly delegated by Congress. *See supra*. Acting under that express delegation, the FCC has reasonably explained that prohibiting texts to numbers on the Do Not Call List "make[s] … enforcement easier," "eliminate[s] any potential confusion in the industry," and aligns with both its longstanding determination that cell phone numbers are eligible for protection and the established meaning of the word "call" in other TCPA contexts. 38 F.C.C. Rcd. at 12256–57 ¶¶ 26–27. Because the FCC acted reasonably and consistently in reaching that conclusion, this Court should

16

affirm that "reasoned decisionmaking." *Loper Bright*, 603 U.S. at 395. Or, at a minimum, this court should look to the FCC's longstanding and consistent interpretation of the word "call" as an "informed judgment to which [it can] properly resort for guidance." *Id.* at 388 (citing *Skidmore*, 323 U.S. at 139–40).

In any event, the FCC's interpretation is, at the very least, an "informed judgment" that should be accorded "great weight" by this court. *Loper Bright*, 603 U.S. at 388; *see Skidmore v. Swift Co.*, 323 U.S. 134, 139–40 (1944). The FCC's position is grounded in the agency's specialized expertise, consistent across decades, and well-reasoned. So, it has all the hallmarks of an agency decision with "the power to persuade." *Loper Bright*, 603 U.S. at 388.

### d. Furthermore, Defendant's argument asks this Court to apply the Incorrect Standard of Review.

Contrary to Defendant's contention, "when an agency exercises discretion granted by a statute, judicial review is typically conducted under the Administrative Procedure Act's deferential arbitrary-and-capricious standard. ***Under that standard, a court asks not whether it agrees with the agency decision, but rather only whether the agency action was reasonable and reasonably explained***." *Seven Cty. Infrastructure Coal. v. Eagle Cty.*, 145 S. Ct. 1497 (2025) (emphasis added) (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 391-392) (citing *Motor Vehicle Mfrs. Ass'n of United States, Inc.* v. *State Farm Mut. Auto. Ins. Co.*, 463 U. S. 29, 43 (1983); *FCC* v. *Prometheus Radio Project*, 592 U. S. 414, 423 (2021) ("A court

17

simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision.") (emphasis added); *see also Zimmer Radio of Mid-Missouri, Inc. v. FCC,* 145 F.4th 828 (8th Cir. 2025) ("We consider a challenge to the agency's decision making under the APA's arbitrary-and-capricious standard next. But because Congress granted the FCC discretion to interpret Section 202(h) within the public interest, we decline to grant the petition on the basis that the FCC's definition of 'competition' is inconsistent with Section 202(h).").

Under the correct standard of review, it cannot be said that the FCC, under its grant of authority from Congress, acted unreasonably or inconsistent with the statute when it extended the TCPA's protections, including the DNC Provision, to texts. ***Congress adopted the FCC's interpretation*** when it amended the TCPA. *See Williams v. Myler Disab., LLC*, No. 3:20-cv-00275-FDW-DCK, 2020 U.S. Dist. LEXIS 211914, at n. 2 (W.D.N.C. Nov. 12, 2020) ("In addition to the Supreme Court and the FCC, ***Congress*** has also made clear the TCPA's applicability to text messages.") (citing *TRACED Act*, PL 116-105, December 30, 2019, 133 Stat 3274. The Supreme Court and every Circuit Court have so agreed.

In *Davis*, the court applied the wrong standard of review, relying instead on *McLaughin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025). *See* 2025 U.S. Dist. LEXIS 167366, at *9 (N.D. Fla. Aug. 26, 2025). The applicable

18

standard is not "appropriate respect" as the *Davis* court held, but instead an inquiry into whether the FCC acted reasonably and reasonably explained its exercise of discretion. Such is the case here because Congress instructed the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S. Code § 227(c)(1) (titled "Protection of Subscriber Privacy Rights").

Indeed, "Congress vested the FCC with considerable authority to implement the Telephone Act." *Charvat v. Echostar Satellite, LLC*, 630 F.3d 459 (6th Cir. 2010). In furtherance of that goal, Congress directed the FCC to "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish the purposes of this section." *See Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F. 3d 1110, 1123 (11th Cir. 2014) (citing 47 U.S.C. § 227(c)(1)(E)). Because the FCC exercised its discretion granted by statute and was rulemaking, the APA's deferential arbitrary-and-capricious standard applies. To be sure, "[t]he scope of this review 'is narrow,' and [we] must exercise appropriate deference to [the FCC's] decisionmaking and not substitute [our] own judgment for that of the [Commission]." *Zimmer Radio of Mid-Missouri, Inc. v. FCC,* 145 F.4th 828 (8th Cir. 2025).

Under this standard, it cannot be said that the FCC's action was unreasonable or not reasonably explained. In the 2023 Order, the FCC explained its reasoning for

clarifying and codifying the DNC protections to cover text message solicitations:

> Consumers increasingly rely on text messaging to stay in touch with friends and family, to do business, communicate with their child's school, and get information from their government. On many devices, people immediately see some or all of the messages once received on the device, whereas they have the option to ignore unwanted calls. This causes consumers to open their texts quickly because texts are an expected trusted source of communications, not annoyance and scams. The rise of junk texts jeopardizes consumer trust in text messaging[,] frustrate[s] consumers, and [causes] serious harm.

*Id*. at ¶1. Accordingly, "the Commission has considered the relevant factors and articulated a rational connection between the facts found and the choice made." *See Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 105 (1983).

In fact, in *Jones v. Blackstone Med. Servs., LLC*, which Defendant cites in support of its motion, court found "[t]he Plaintiffs' position — that text messages are calls as the latter term is used in the TCPA — ***is an eminently reasonable one***, particularly given the TCPA's purpose and the prevalence of text messaging in the U.S. today." No. 1:24-cv-01074-JEH-RLH, 2025 U.S. Dist. LEXIS 138371, at *14 (C.D. Ill. July 21, 2025) (emphasis supplied). Defendant concedes that for another section of the statute, it is not unreasonable to include texts as calls. *See* Mot. at 6.

Had the court in that case applied the correct standard of review to the FCC's action, it should have followed the FCC's interpretation because nothing about it is arbitrary and capricious. *See Zimmer Radio of Mid-Missouri, Inc. v. FCC,* 145 F.4th 828 (8th Cir. 2025) ("An agency action may be arbitrary and capricious in many ways: by (1) 'rel[ying] on factors which Congress has not intended it to consider,'

20

(2) 'entirely fail[ing] to consider an important aspect of the problem,' (3) 'offer[ing] an explanation for its decision that runs counter to the evidence before the agency,' or (4) offering an explanation that 'is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" (quoting *Citizens Telecomms. Co. of Minn., LLC v. FCC*, 901 F.3d 991, 1000 (8th Cir. 2018)).

Even under the standard Defendant advances, this Court should "afford[] appropriate respect to the agency's interpretation." *Loper Bright*, 603 U.S. at 402). As *Loper Bright* explains, a court may apply "deferential review upon concluding that a particular statute empowered an agency to decide how a broad statutory term applied to specific facts found by the agency." *Id.* Because, as discussed above, Congress empowered the FCC to decide how to apply a statutory term to specific facts, the FCC's interpretation is entitled to "deferential review." *Loper Bright*, 603 U.S. at 388. This court should therefore, "unhesitatingly afford deference to the [FCC] holding that a text message should be treated as a 'call' for purposes of the TCPA." *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015).

Moreover, as explained, the FCC's interpretation of a text message being a call is not at odds with the statute. Because the TCPA does not define the term "call", courts interpret the word "according to its 'ordinary, contemporary, common meaning.'" *Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1247 (S.D. Fla. 2019) "[T]he dictionary definition of 'call' [i]s 'to communicate with or try to

21

get into communication with a person by a telephone.'" *Id*. (quoting *Satterfield*, 569 F.3d at 953-54). "Other courts have adopted this definition in the TCPA context." *Id*. (citing *Ashland Hosp. Corp. v. Serv. Employees Int'l Union*, 708 F.3d 737, 742 (6th Cir. 2013); *Fillichio v. M.R.S. Assocs., Inc.*, No. 09-61629-CIV, 2010 WL 4261442, at *3 (S.D. Fla. Oct. 19, 2010)).

The transmission of a text message to a consumer's telephone falls squarely within the definition of the word "call" as the purpose is to communicate with the person via their telephone. *See Satterfield*, 569 F.3d at 954 ("It is undisputed that text messaging is a form of communication used primarily between telephones."). Moreover, "[b]oth the FCC and the courts have recognized that the scope of the TCPA naturally evolves in parallel with telecommunications technology as it evolves, *e.g.*, with the advent of text messages." *Saunders v. Dyck O'Neal, Inc.*, 319 F. Supp. 3d 907, 911 (W.D. Mich. 2018). Indeed, in a 2015 ruling, the FCC stated, "[t]he TCPA's text and legislative history reveal Congress's intent to give the Commission broad authority to enforce the protections from unwanted robocalls as *new technologies emerge*." *Id*. (quoting *FCC 2015 Ruling*, 30 F.C.C. Rcd. 7961, 2015 FCC LEXIS 1586, at ¶¶ 113-15 (2015) (emphasis added)).

Application of these principles can be seen in district court's unanimous conclusion that "ringless" voicemail technology is a "call" covered under the TCPA even though the technology did not exist when the TCPA was enacted

22

because the purpose – like text messages – is to communicate with a consumer via their telephone. Courts routinely apply the TCPA to evolving modalities that function as "calls," including ringless voicemail, because the statute protects the privacy interest regardless of transmission path. *See, e.g., Grant v. Regal Auto. Grp.,* 2020 U.S. Dist. LEXIS 248347, at *11 (M.D. Fla. July 30, 2020) (collecting cases). That same principle easily encompasses texts in §227(c)'s DNC context.

The Court in *Wilson v. Skopos Fin., LLC*, 2025 U.S. Dist. LEXIS 138638, *10-13 (D. Or. July 21, 2025) denied an identical motion to dismiss holding:

> [T]he FCC's decision to include text messages is congruent with Congress's overarching goals for the TCPA. Congress enacted the TCPA "to address a growing number of telephone marketing calls and certain telemarketing practices thought to be an invasion of consumer privacy and even a risk to public safety." *2003 Rules & Reguls.*, 18 F.C.C. Rcd. at 14018. Section 227(c) specifically targets "the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." § 227(c)(1). With those goals in mind, the "basis" for the FCC's conclusion becomes abundantly clear: unsolicited text messages invade the privacy and disturb the solitude of their recipients. *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017). They should therefore be included within the purview of the DNC Registry's protections. It cannot be argued in good faith that text messages are so categorily different from phone calls that the former cannot be considered an invasion of consumer privacy when directed at numbers on the DNC Registry.. . . On this point, Defendant is without support. The Court concludes that unsolicited text messages sent in violation of the DNC Registry can give rise to a cause of action under § 227(c)(5).

Defendant's request to exclude text messages from the protections afforded consumers under the TCPA also ignores that "the TCPA is a remedial statute, it should be construed to benefit consumers." *Gager v. Dell Fin. Servs., LLC*, 727

F.3d 265, 271 (3d Cir. 2013); *see also Hooters of Augusta, Inc. v. Am. Global Ins. Co.*, 272 F. Supp. 2d 1365, 1376 (S.D. Ga. 2003) ("I find that § 227 is a remedial statute."). In enacting the TCPA, Congress found that "[u]nrestricted telemarketing….can be an intrusive invasion of privacy." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). The outcome Defendant requests – allowing companies to spam consumers with unwanted text messages even after requests for the messages to stop – would result in harm that, again, Circuit courts have found is real and concrete. *See Drazen*, 74 F.4th at 1346 (11th Cir. 2023) ("we hold that the receipt of an unwanted text message causes a concrete injury"). Congress intended for the privacy protections of the TCPA to cover new technologies by leaving the term "call" undefined thereby allowing the statute to continue to protect consumers. This Court should, respectfully, reject Defendant's myopic interpretation of the statute that would render it moot.

## II.    Plaintiff Plausibly Pleads Direct Liability

The Complaint plausibly alleges direct liability: DXL "delivered at least six text messages" advertising its goods to Plaintiff's DNC-registered personal number, more than 31 days after registration and without consent, in this District. (ECF No. 1 ¶¶ 11–13, 16, Jurisdiction/Venue). Those brand-linked, promotional contents and timing facts readily support a reasonable inference that DXL sent the texts. *See e.g., Smith v. Am.-Amicable Life Ins. Co. of Texas*, No. CV 22-333, 2022

WL 1003762, at *2 (E.D. Pa. Apr. 4, 2022) (holding sufficient allegations that during the calls the plaintiff was told that he was "speaking with American-Amicable" and allegations that the calls "concerned insurance benefits–American-Amicable's area of business"); *Abramson v. Josco Energy USA, LLC*, No. 2:21-cv-1322, 2022 U.S. Dist. LEXIS 237792, at *6 (W.D. Pa. Aug. 1, 2022) ("Defendant might dispute those facts, but as now alleged, they go beyond formulaically reciting the elements of Plaintiff's cause of action")

## III.    The Complaint Alleges Every Element of a Do Not Call Claim

The Complaint alleges a residential cellular number, DNC registration, multiple marketing texts more than 31 days after registration and more than one contact within 12 months, satisfying §227(c)(5) and 47 C.F.R. §64.1200(c), (e).

The Plaintiff alleges that he is the regular and sole user of the number, that he uses it as his personal residential line not for business, and that he never provided prior express invitation or permission for DXL to send marketing texts (ECF No. 1 ¶¶ 8–10, 17–18). He further pleads that his number has been on the National Do Not Call Registry since August 13, 2015, which is designed to protect residential subscribers (ECF No. 1 ¶ 11).

These straightforward allegations undercut the Defendant's motion.

First, the Plaintiff does not have to plead an affirmative defense, as Judge Ross previously find in a TCPA case in this District. *See e.g. Charvat v. Home*

25

*Depot U.S.A., Inc.,* 2017 U.S. Dist. LEXIS 227309, *6 (N.D. Ga. 2017)

("The Established Business Relationship exception is an affirmative

defense"); *Krakauer v. Dish Network, LLC*, 311 F.R.D. 384, 397 (M.D.N.C. 2015)

("the absence of an [established business relationship] is not an element of a TCPA

claim that [plaintiff] has to prove").

Second, the Plaintiff has adequately pled that he uses the number as a

residential telephone line. The allegations expressly frame the number as a

personal, residential line, not a business contact point (ECF No. 1 ¶¶ 8–11). The

complaint also pleads that the texts were intended for someone else (confirming

they were unsolicited), that DXL knew or should have known the number was

DNC-registered, and that the messages were delivered in this District (ECF No. 1

¶¶ 15, 19, Jurisdiction & Venue).

What's more, the FCC has adopted enhanced protective standards for

cellular telephone numbers. To this end, the FCC has established a presumption

that "wireless subscribers who ask to be put on the national do-not-call list *are*

*residential subscribers.*" *FCC Report and Order*, 18 FCC Rcd. 14014, 14039

(2003) (cleaned up) (emphasis added). This is so, *even if they also use such*

*numbers partially for business purposes.* Indeed, the Fourth Circuit in *Krakauer v.*

*Dish Network, L.L.C*, 925 F.3d 643, 657 (4th Cir. 2019), concluded the TCPA's

language was clear and that numbers on the Do Not Call Registry, by virtue of

their mere registration, are *presumptively residential*. Courts nationwide have agreed. *See, e.g.*, *Tsolumba v. SelectQuote Ins. Servs.*, No. 5:22-CV-00712, 2023 WL 6146644, at *5 n.3 (N.D. Ohio Sept. 20, 2023) ("This Court therefore joins the majority of courts throughout the country who have held that cell phones like [plaintiff's] are entitled to the TCPA's protection as residential telephones."); *Sasin v. Enter. Fin. Grp., Inc.*, No. CV 17-4022-CBM-RAO, 2017 WL 10574367, at *5 (C.D. Cal. Nov. 21, 2017) (denying MTD for personal cell on DNC); *Hodgin v. Parker Waichman Llp*, No. 3:14-CV-733-DJH, 2015 WL 13022289, at *3 (W.D. Ky. Sept. 30, 2015) (same); *Phillips v. Mozes, Inc.*, No. 2:12-CV-04033-JEO, 2014 WL 12589671, at *6 (N.D. Ala. Sept. 3, 2014) (holding that allegation that cell phone was registered on DNC created reasonable inference of residential use); *Doyle v. JTT Funding, Inc.*, No. LACV1806145JAKASX, 2019 WL 13037025, at *8 (C.D. Cal. Dec. 2, 2019) (judgment for plaintiff).

As Judge Cohen held in a TCPA case last year, "Plaintiff alleges in the Amended Complaint that his cell phone number at issue in this case 'is his residential telephone number that is used for personal purposes.' Am. Compl. ¶ 28. "This allegation, coupled with the TCPA's presumption that wireless subscribers who ask to be put on the national do-not-call list [are] 'residential subscribers,' is sufficient to allege that Plaintiff is a residential telephone subscriber under

27

the TCPA." *Lourie v. Papa John's Int'l, Inc.*, 2024 U.S. Dist. LEXIS 119679, *15-16 (N.D. Ga. 2024). This Court should hold the same.

Third, the provisions of the TCPA do not require that one *personally register* their number on the Do Not Call Registry because that fact would be *impossible to prove*, as the FTC is neither authorized to nor collects such information. Not surprisingly several courts have rejected this argument and only one has adopted it, *Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-CV-15-CJW-MAR, 2022 WL 2713278, at *2 (N.D. Iowa June 9, 2022). The FCC's regulations permit a "residential telephone subscriber" to register "his or her telephone number" on the Registry. 47 C.F.R. § 64.1200(c)(2). Once a telephone number is registered on the Registry, the "registrations must be honored indefinitely, or until the registration is cancelled by the consumer of the telephone number is removed by the database administrator." *Id*. Previously, such registrations had to be renewed, but this hasn't been the case since at least the mid-2000s. Therefore, in addition to requiring the government to collect information it isn't even legally authorized to collect, *Rombough* purports to require some TCPA plaintiffs to do the impossible–personally *re*register a number already on the Registry. It has been disagreed with by every other court to consider it and its premises. *See, e.g.*, *Watson*, No. 20 CIV. 4572 (LGS), 2022 WL 4586407, at *9 (S.D.N.Y. Sept. 29, 2022) (holding that "whether each class member registered their number on the NDNCR is

28

irrelevant."); *Klassen v. Solid Quote LLC*, No. 23-CV-00318-GPG-NRN, 2023 WL

7544185, at \*4 (D. Colo. Nov. 14, 2023); *D.G. v. William W. Siegel & Assocs.,* 791

F. Supp. 2d 622, 625 (N.D. Ill. 2011) ("Plaintiff is the regular user and carrier of

the phone, Plaintiff qualifies as a "called party" under the TCPA."); *Olney v.*

*Progressive Cas. Ins. Co.*, 993 F. Supp. 2d 1220, 1225 (S.D. Cal. 2014)

("Defendant seeks to arbitrarily limit standing to only the individual whose name

appears on the bill. Notably, Defendant does not cite a single case to support this

position. Further, this position has been rejected by other courts.").

    *Rombough* was most notably rejected in *Callier v. Am.-Amicable Life Ins.*

*Co. of Texas,* No. EP-22-CV-00018-FM, 2022 WL 17732717, at \*5 (W.D. Tex.

Oct. 18, 2022), where the Western District of Texas called the argument

underlying the *Rombough* decision one that "borders on the frivolous." The *Callier*

court went on to state:

> *Rombough's* nitpicky formality is thoroughly unpersuasive. The DNC is not
> auto-populated: it is a list of phone numbers for individuals who have
> requested that telemarketers not contact them. While it is possible a third-
> party may have registered a plaintiff's phone number before a plaintiff
> acquired it, this is unlikely given how infrequently people change numbers.
> And it is particularly unlikely here given Plaintiff's well-documented desire
> that telemarketers respect his registration with the DNC.

*Id.* at \*6 (cleaned up). As a result, there is no requirement that an individual

personally register their number on the Do Not Call Registry.

Taken as true, those facts state a straightforward DNC claim and the

Defendant's motion should be denied.

## IV.    The Class Allegations Should be Addressed on a Full Record, not Determined Prior to any Discovery.

Uniform texting campaigns, centralized opt-out and consent logs, and DNC-

scrubbing procedures are common proof that will drive Rule 23 analysis and

support certification, but certainly should not be prevented prior to any discovery.

As the Eleventh [*8]  Circuit explained below, the determination of whether to

certify the class usually requires some discovery:

> [T]he Supreme Court has emphasized that class certification is an
> evidentiary issue, and "it may be necessary for the court to probe
> behind the pleadings before coming to rest on the certification
> question." *Comcast Corp. v. Behrend*, __ U.S. __, 569 U.S. 27, 133
> S.Ct. 1426, 1432, 185 L.Ed.2d 515 (2013) (internal quotation marks
> omitted). In fact, "the determination usually should be predicated on
> more information than the complaint itself affords. The court may,
> and often does, permit discovery relating to the issues involved in
> maintainability, and a preliminary evidentiary hearing may be
> appropriate or essential...." *Huff v. N.D. Cass Co. of Ala.*, 485 F.2d
> 710, 713 (5th Cir.1973) (*en banc*) (internal citation and footnote
> omitted). After all, "class determination generally involves
> considerations that are enmeshed in the factual and legal issues
> comprising the plaintiff's cause of action." *Wal-Mart Stores, Inc. v.
> Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 2552, 180 L.Ed.2d 374 (2011)
> (internal quotation marks omitted).

*Herrera v. JFK Med. Ctr. Ltd. P'ship*, 648 Fed. App'x 930, 934 (11th Cir. 2016).

Relying on *Herrera*, other courts have denied similar motions to strike in TCPA

cases. *See e.g. Stemke v. Marc Jones Constr., LLC*, 2021 U.S. Dist. LEXIS 181916, *7-8 (M.D. Fl. 2021) ("The allegations in the Amended Complaint are not so facially defective to allow the Court to deny certification without permitting Plaintiff to take discovery to try to satisfy the requirements of Rule 23. Sunpro is free to renew the arguments once Plaintiff moves for class certification.")

Defendant's argument focuses on a potential affirmative defense of consent or established business relationship (of which they've produced no evidence to support) to assert that the action in its entirety is incapable of being maintained as a class action. In rejecting the same argument previously in a TCPA case, another Court held:

> The Court finds that the defendant's motion to strike the class allegations is premature before plaintiff can develop the factual record through discovery. Loan Depot's citation of consent as a potential affirmative defense is insufficient to warrant striking the putative class solely on the pleadings. The motion to strike class allegations will, therefore, be denied.

*Rosenberg v. LoanDepot.com LLC,* 435 F. Supp. 3d 308, 318 (D. Mass. 2020).

Even though Plaintiff does not believe that the Defendant obtained the appropriate prior express written consent for its calls, the Plaintiff made a conscious decision to not include language about individuals who have not provided their "prior express written consent" in the class definition, as other federal courts *have found that* to be an impermissible fail-safe class in TCPA cases. Nor does the determination of the consent issue necessitate thousands of

31

individual mini-trials as the Defendant claims. Courts do not see consent issues as problematic from a class certification perspective, particularly when there are uniform issues with the offered consent evidence. *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 972 (N.D. Cal. 2019), *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012), *Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 504 (S.D.N.Y. 2014).

Notwithstanding, before any discovery has taken place, Defendant claims that Plaintiff's class allegations should be stricken and that no court could ever certify a case under the TCPA's National Do Not Call Registry provision because the determination of whether a number is residential would need to be made on a case-by-case basis. Luckily for consumers bombarded with unwanted telemarketing calls despite their numbers being registered on the National Do Not Call Registry, this is not the case as the majority of courts to address this issue at the pleadings stage have found arguments like Defendant's argument to be premature at best. *See, e.g., Hughes v. Circle K Stores, Inc.*, 740 F. Supp. 3d 721, 727 (C.D. Ill. 2024) ("This reasoning extends to Circle K's arguments challenging commonality as well. While the Court appreciates that Circle K has concerns regarding the class definition, scope of the class, and factual challenges to commonality, its motion to strike class allegations is premature. … As discovery progresses, the class definition may very well need to be redefined and nothing in this Order precludes the Court from doing

so."); *Lopez v. Consumer Safety Tech., LLC*, No. 8:24-cv-150-WFJ-AAS, 2024 U.S. Dist. LEXIS 84873, at *14 (M.D. Fla. May 10, 2024) ("The instant matter is not before the Court on a Rule 23 motion to certify. Instead, Intoxalock brings a Rule 12(f) Motion to Strike at an early stage of proceedings, before discovery has taken place. Nothing in the Amended Complaint indicates that a large portion of the class members' telephone numbers are nonresidential"); *see also Williams v. PillPack LLC*, No. C19-5282 TSZ, 2021 U.S. Dist. LEXIS 27496, at *19-20 (W.D. Wash. Feb. 12, 2021) (granting class certification: "Defendant likewise maintains that Plaintiff has not proposed a reliable means of identifying residential phone numbers without individual inquiry. … Plaintiff's expert excluded from the list of proposed Class members 'all telephone numbers that were associated with any types of business and/or government' using LexisNexis data, and proposed other methods to 'cross-check the business identification process.' … Plaintiff's method reliably excludes non-residential numbers from the proposed Class list.").

As a result, the need to ultimately determine whether the reassigned, National Do Not Call Registry registered telephone numbers Defendant sent text messages to were residential or business numbers is not a basis to deny class certification at this or any other stage.

The cases Defendant cites do not support a different conclusion. For example, *Payne v. Sieva Networks, Inc.,* 347 F.R.D. 224, 227 (N.D. Cal. July 29, 2024), arose

from text messages directed to owners of trucking businesses who had used their telephone numbers to register their trucking business with the Department of Transportation—including the plaintiff. In granting the defendant's motion to strike, the court relied on undisputed evidence that the defendant "target[ed] trucking businesses that ha[d] registered with the USDOT" and the plaintiff failed to provide any proof that any telephone number text messages "including what he contend[ed] [was] his personal cell phone number—[were] registered with the USDOT for any non-business purpose." *Id*.; Furthermore, in *Payne* the court acknowledged that other circumstances certification of classes under the TCPA's National Do Not Call Registry is appropriate, like when the communications are directed towards consumers—like here—in which case expert testimony and databases like Lexis-Nexis could be used to determine whether numbers were residential. *Payne,* 347 F.R.D. at 227. Here, in contrast, Defendants targets consumers for consumer purchases, Plaintiff has never used his number in connection with a business, and there is no evidence that any other putative class member did either. Accordingly, based on the court's analysis in *Payne*, Defendant's premature and otherwise unsupported motion to strike Plaintiff's class allegations should be denied.

## Conclusion

Reading "call" to exclude text messages would open a gaping loophole in the very privacy regime Congress enacted. Telemarketers could sidestep the

National Do Not Call rules simply by swapping a ring for a buzz, nullifying decades of settled practice and exposing millions of residential subscribers to the same intrusive solicitations the TCPA was designed to prevent. The statute's text ("call or message"), structure (uniform use of "call" across § 227), purpose (residential privacy), longstanding FCC implementation, and Congress's own reinforcement all point the same way: texts are calls for TCPA purposes, including under § 227(c).

Separately, the Complaint more than plausibly pleads direct liability. It alleges that DXL delivered the marketing texts, identifies their promotional nature, pleads timing well beyond the 31-day DNC window.

Finally, striking the class allegations now would short-circuit Rule 23. The issues DXL raises—consent, established business relationships, residential status— are commonly provable from DXL's own records and standard texting practices and should be tested on a factual record, not on the pleadings.

For all these reasons, and to avoid an outcome that would erode Congress's consumer-privacy protections for the very medium most telemarketers now use, the Court should deny DXL's motion in its entirety and allow this case to proceed to discovery and, in due course, class certification.

Date: September 17, 2025

*/s/ Anthony Paronich*
Anthony I. Paronich, *pro hac vice*
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
anthony@paronichlaw.com

*Counsel for Plaintiff and the proposed class*