No *Shepard's* Signal™
As of: September 22, 2025 1:27 PM Z

# Bosley v. A Bradley Hosp. LLC

United States District Court for the Southern District of Florida

September 18, 2025, Decided; September 19, 2025, Entered on Docket

Case No. 25-cv-22336-BLOOM/Elfenbein

**Reporter**
2025 U.S. Dist. LEXIS 183986 *; 2025 LX 441085

CASSANDRA BONAIR BOSLEY, individually and on behalf of all others Similarly situated Plaintiff, v. A BRADLEY HOSPITALITY LLC d/b/a LA MESA MIAMI, Defendant.

## Core Terms

*text message*, message, telemarket, entity, advertize, revoke, opt-out, do-not-*call*, concrete, registry, unwanted, caller, reply, telephone, residential, subscriber, solicit, telephone number, phone number, consumer, register, telephone solicitation, motion to dismiss, express consent, injury in fact, telephone *call*, make a *call*, opt

**Counsel:** [*1] For Cassandra Bonaire Bosley, Individually and on behalf of all others similarly situated, Plaintiff: Andrew John Shamis, LEAD ATTORNEY, Shamis & Gentile P.A., Miami, FL; Scott Adam Edelsberg, Edelsberg Law PA, Aventura, FL.

For A Bradley Hospitality LLC, doing business as, La Mesa Miami, Defendant: Matthew Eric Ladd, LEAD ATTORNEY, Coral Gables, FL.

**Judges:** BETH BLOOM, UNITED STATES DISTRICT JUDGE.

**Opinion by:** BETH BLOOM

## Opinion

**ORDER ON MOTION TO DISMISS AND/OR STRIKE COMPLAINT**

**THIS CAUSE** is before the Court upon Defendant Bradley Hospitality LLC's ("Defendant") Motion to Dismiss and/or Strike Complaint. ECF No. [9]. Plaintiff filed a Response in Opposition ("Response"), ECF No. [10]. Defendant did not file a reply. For the reasons that follow, Defendant's Motion to Dismiss and/or Strike Complaint is denied.

**I. BACKGROUND**

This case arises from a series of purportedly unsolicited *text messages* Defendant sent to Plaintiff as a part of Defendant's marketing campaign. The Complaint asserts the following allegations: Plaintiff is the subscriber and sole user of a residential cellphone number ending in 9198 that was registered and continues to be registered on the national do-not-*call* registry. ECF No. [1] at ¶¶ 32-34. "Defendant [*2] is a hospitality group that operates a restaurant franchise in Florida." ECF No. [1] at ¶ 3. To promote its business, Defendant relies on telephone sales *calls* and *text messages* "with no regard[ ] for consumers' rights under the [Telephone Consumer Protection Act] ["]*TCPA*["], even after customers request Defendant to stop texting them." *Id.* at ¶ 34. "At no point in time [has] Plaintiff provide[d] Defendant with her express written consent to be contacted," nor does Plaintiff have an "existing business relationship with Defendant." *Id.* at ¶¶ 28-30.

Beginning on December 11, 2024, Defendant "sent multiple telemarketing *text messages* to Plaintiff's cellular telephone number ending in 9198, from Defendant's 786-746-9484 number." *Id.* at ¶¶ 13, 21.[1] After receiving several of these telemarketing[2]

---

[1] Plaintiff alleges none of these messages were for an emergency purpose or to collect a debt. ECF No. [1] at ¶ 27.

[2] According to Plaintiff, "Defendant's *text messages* constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services, i.e., promoting

Case 1:25-cv-02777-TWT   Document 21-1   Filed 09/22/25   Page 2 of 8

Page 2 of 8

Bosley v. A Bradley Hosp. LLC, 2025 U.S. Dist. LEXIS 183986

messages, Plaintiff responded to Defendant on January 2, 2025, "with the message 'No stop,' using standard opt out language, in an attempt to opt-out of any further **text message** communications with Defendant." *Id.* at ¶ 14. Notwithstanding Plaintiff's opt-out request, Defendant continued to bombard Plaintiff with more unwanted **text messages** until at least March 2025. *Id.* at ¶ 15. During that time, Plaintiff sent additional opt-out [*3] **text messages**, but to no avail. *See id.* at ¶ 16. Although Defendant had the "capability of immediately complying with opt-out requests, . . . Defendant fai[led] to ensure that requests by Plaintiff . . . to opt-out of future communications [were] honored within a reasonable time." *Id.* at ¶¶ 17-18. Specifically, Defendant does not "maintain a master optout list" or "maintain internal polices to sufficiently honor the opt-out requests[.]" *Id.* at ¶ 19.

Plaintiff alleges that "Defendant's unwanted telemarketing **text messages** caused Plaintiff actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion." *Id.* at ¶ 37. Specifically, Plaintiff alleges that each message caused her to stop what she was doing to review the message, wasting fifteen to thirty seconds reviewing each message. *Id.* at ¶ 38.

Based on the alleged misconduct, Plaintiff filed a Complaint asserting two separate Telephone Communication Protection Act ("**TCPA**") claims. Count I alleges that Defendant "violated 47 U.S.C. § 227(c)(5) because Plaintiff received more than one telephone **call** in a 12- month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200[(c)], which prohibits an entity [*4] from "initiating, or causing to be initiated telephone solicitations to telephone subscribers such as Plaintiff . . . who registered their respective telephone numbers on the National Do Not **Call** Registry." *Id.* at ¶¶ 57-58. Count II alleges that Defendant violated 47 U.S.C. § 227(c)(5) because Defendant sent messages to Plaintiff despite not having "instituted procedures for maintaining a list of persons who request not to receive telemarketing **calls** made by or on behalf [of Defendant], pursuant to 47 C.F.R. § 64.1200(d)," and after Plaintiff had made requests to Defendant not to receive **calls** from Defendant." *Id.* at ¶¶ 66-67.

## II. LEGAL STANDARD

### A. Article III Standing

Under Article III of the Constitution, federal courts are limited to adjudicating only "Cases and Controversies." U.S. Const. Art. III § 2; *see* Stalley ex rel. U.S. v. Orlando Regional Healthcare System, Inc., 524 F.3d 1299, 1232 (11th Cir. 2008). For a case or controversy to exist, the Plaintiff must have standing to bring the action. *See* I.L. v. Alabama, 739 F.3d 1273, 1278 (11th Cir. 2014) ("Standing is one of the Article III case or controversy requirements."). "To have standing, the plaintiff[] must demonstrate injury in fact, causation, and redressability." *Id.* All three must exist before a federal court may exercise jurisdiction over the case. *See* Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd., 484 F. Supp. 3d 1215, 1225 (S.D. Fla. 2020). "The 'foremost' standing requirement is injury in fact." Trichell v. Midland Credit Management, Inc., 964 F.3d 990, 996 (11th Cir. 2020) (quoting Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 99, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998)). "An injury in fact is 'an invasion of a legally protected interest [*5] which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" I.L., 739 F.3d at 1278; Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). "A 'concrete' injury must be 'de facto'—that is, it must be 'real, and not abstract.'" Trichell, 964 F.3d at 996 (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 340, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016)). However, an injury need not yet have occurred to constitute an injury in fact. A harm yet to occur will still satisfy the case and controversy requirement if it is "sufficiently substantial and imminent." *DiPierro v. Fla. Health Sci. Center, Inc.*, Case No: 8:23-cv-01864-KKM-NHA, 2024 WL 3051320, at *5 (M.D. Fla. June 18, 2024). A harm is imminent if there is "a realistic danger of sustaining a direct injury as a result" of the challenged conduct. Fla. State Conf. of NAACP v. Browning, 522 F.3d 1153, 1161 (11th Cir. 2008) (quoting Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298, 99 S. Ct. 2301, 60 L. Ed. 2d 895 (1979)).[3]

---

Defendant's restaurant and entertainment services." ECF No. [1] at ¶ 22. Specifically, the "information contained in the **text message**[s] advertise[ ] Defendant's various discounts and promotions, which Defendant sends to promote its business." *Id.* at ¶ 23.

[3] "*Merriam-Webster* defines 'imminent' in its online dictionary to mean 'ready to take place; *especially*: hanging threateningly" and provides as an example the "*imminent* danger of being run over[.]" https://www.merriam-webster.com/dictionary/imminent." *See* Taylor v. Fred's, Inc.,

Case 1:25-cv-02777-TWT   Document 21-1   Filed 09/22/25   Page 3 of 8

Page 3 of 8

Bosley v. A Bradley Hosp. LLC, 2025 U.S. Dist. LEXIS 183986

**B. Failure to State a Claim for Relief**

"On a Rule 12(b)(6) motion to dismiss, '[t]he moving party bears the burden to show that the complaint should be dismissed.'" *Sprint Sols., Inc. v. Fils-Amie, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014)* (quoting *Mendez-Arriola v. White Wilson Med. Ctr. PA*, No. 09-495, 2010 WL 3385356, at *3 (N.D. Fla. Aug. 25, 2010)). A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P. 8(a)(2)*. Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*; see *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (explaining that *Rule 8(a)(2)*'s pleading standard "demands more than an unadorned, thedefendant-unlawfully-harmed-me accusation"). [*6] Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal, 556 U.S. at 678* (quoting *Twombly, 550 U.S. at 557* (alteration in original)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly, 550 U.S. at 570*). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly, 550 U.S. at 555*. When a defendant moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the court must accept the plaintiff's allegations as true and evaluate all possible inferences derived from those facts in favor of the plaintiff. See *Am. Marine Tech, Inc. v. World Grp. Yachting, Inc., 418 F. Supp. 3d 1075, 1079 (S.D. Fla. 2019)*. In considering a motion to dismiss, the court is limited to the facts contained in the complaint and attached exhibits. See *Thaeter v. Palm Beach Cty. Sheriff's Office, 449 F.3d 1342, 1352 (11th Cir. 2006)*.

**III. DISCUSSION**

Defendant asserts several arguments to support dismissing Plaintiff's Complaint. Defendant explains that "[t]he allegations before the court are that the **text messages** sent [by Defendant] qualify as an

*285 F. Supp. 3d 1247, 1259 (N.D. Ala. 2018)*.

'advertisement' without express consent in violation of *47 CFR 64.1200*." ECF No. [9] at 5-6. However, Plaintiff "does not and cannot establish Article III Standing" to assert her **TCPA** claims because the **text messages** Defendant [*7] sent to Plaintiff were not "advertisements." *Id.* at 5. According to Defendant, the "**TCPA** defines 'advertisements' as any material advertising the commercial availability or quality of any property, goods, or services." *Id.* at 6. Defendant claims the content of the seven messages it sent were as follows: (1) the first **text messages** "merely announces that there is [a] movie night and comedy without providing a date, time, or price;" (2) the second **text messages** is the same announcement as the first but does not contain a "**call**" to action; (3) "[t]he third message provides a date, and announcement that a table will be given away on Feb. 14 for free to VIP clients;" and (4) "[t]he last four texts are also merely announcements without any '**call**' to action.'" *Id.* at 5. Accordingly, because the "seven **text messages** do not specify the availability or quality of the 'shows' being advertised," Defendant argues the messages are "not 'advertisements'" but mere informational messages. *Id.* at 6.

Defendant further argues that Plaintiff has failed to allege a concrete injury as a result of the **text messages** because merely alleging "actual harm," "invasion of privacy," and "annoyance" are too conclusory [*8] to establish a concrete injury. *Id.* Moreover, Defendant maintains that taking a few seconds to read a few small **text messages** over the span of months is insufficient to constitute a concrete harm. *Id.*

Lastly, Defendant addresses Plaintiff's allegation that she "responded to Defendant's 786-746-9484 number with the message 'No stop,' using standard opt-out language, in an attempt to opt-out of any further **text message** communications with Defendant." ECF No. [1] at 3. According to Defendant, the phrase "No stop" does not amount to an "unequivocal opt-out request." *Id.* at 4. Defendant points out that pursuant to *47 C.F.R. § 64.1200(a)(10)*:

> A **called** party may revoke prior express consent, including prior express written consent, to receive **calls** or **text messages** made pursuant to paragraphs (a)(1) through (3) and (c)(2) of this section by using any reasonable method to clearly express a desire not to receive further **calls** or **text messages** from the caller or sender. Any revocation request made using an automated,

Case 1:25-cv-02777-TWT   Document 21-1   Filed 09/22/25   Page 4 of 8

Page 4 of 8

Bosley v. A Bradley Hosp. LLC, 2025 U.S. Dist. LEXIS 183986

interactive voice or key press-activated opt-out mechanism on a *call*; using the words "stop," "quit," "end," "revoke," "opt out," "cancel," or "unsubscribe" sent in reply to an incoming *text message*;.... If a *called* party uses any such method [*9] to revoke consent, that consent is considered definitively revoked and the caller may not send additional robocalls and robotexts. If a reply to an incoming *text message* uses words other than "stop," "quit," "end," "revoke," "opt out," "cancel," or "unsubscribe," the caller must treat that reply text as a valid revocation request if a reasonable person would understand those words to have conveyed a request to revoke consent.

While Defendant acknowledges that the regulation provides that texting the word "stop" is an appropriate means of opting out of unwanted *text message* solicitations, Defendant argues that "No stop" is not. According to Defendant, that is especially the case here, where Plaintiff concedes she was specifically "directed to type 'STOP to end' if she wanted the *text messages* to stop," but instead said "No stop." ECF No. [9] at 7. Defendant contends that under the circumstances, "No stop" reasonably conveyed to Defendant that it not stop, "but rather continue." *Id.* Accordingly, "Plaintiff's directive to Defendant" not to stop "implied to Defendant an express consent to 'keep going' or continue providing the *text messages*." *Id.* Defendant therefore insists that this express [*10] consent to receive subsequent messages "precludes the Plaintiff's recovery." *Id.*[4]

Plaintiff responds that Defendant's standing argument "relies on outdated case law and ignores unfavorable, but controlling, Eleventh Circuit precedent." ECF No. [10] at 2. Plaintiff argues that "a plaintiff who receive[s] 'a *single* unwanted, illegal telemarketing *text message* suffere[s] a concrete injury.'" *Id.* (quoting Drazen v. Pinto, 74 F.4th 1336, 1339 (11th Cir. 2023) (emphasis added by Plaintiff)). Therefore, because Plaintiff has alleged that "Defendant sent or caused to be sent," more than one unwanted telemarketing *text message* to Plaintiff's 9198 Number, she has adequately alleged a concrete injury in fact. *Id.* at 6.

Regarding Defendant's argument that the *text messages* were not "advertisements," Plaintiff contends the argument is irrelevant because "neither cause of action alleged by Plaintiff (violations of 47 C.F.R. § 64.1200(c) and (d)) even alleges the *text messages* were advertisements but instead argue that the messages constitute "telephone solicitations" and "telemarketing." *Id.* at 3. As such, any failure to establish that the *text messages* were advertisements is not dispositive.

Plaintiff also disputes the notion that her text stating "'No stop' in [*11] response to [the] 'STOP to end' [messages from Defendant] was an expression of consent to the messages." *Id.* According to Plaintiff, such an interpretation of her messages "defies not only logic, but also the text of 47 C.F.R. § 64.1200(a)(10), which provides that prior express consent may be revoked 'by using any reasonable method to clearly express a desire not to receive further *text messages* or *calls* from the caller or sender.'" *Id.* Plaintiff maintains that her "No stop" messages constituted a reasonable and unambiguous desire for Defendant to cease sending further *text messages*.[5] Moreover, even assuming they did not, "Plaintiff's Complaint establishes that she never provided prior express consent to be *called* or texted by Defendants, that she did not have an established business relationship, and that her 9198 Number was listed on the National Do Not *Call* Registry." *Id.* at 11. Accordingly, the *text messages* sent to Plaintiff before her "No stop" messages were "without consent and in violation of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2)." *Id.*

The Court finds that Plaintiff has standing to bring her claims and has adequately stated claims upon which relief may be granted. Defendant's first argument that there is no concrete harm sufficient [*12] to establish standing for either claim is without merit. The Eleventh Circuit has stated unequivocally that "the receipt of an unwanted *text message* causes a concrete injury," thereby providing a plaintiff with standing to bring a *TCPA* claim. Drazen v. Pinto, 74 F.4th 1336, 1346 (11th Cir. 2023); *see also Eisenband v. Schumacher Auto., Inc.*, No. 18-CV-80911, 2018 WL 7820549, at *2 (S.D. Fla. Oct. 23, 2018) (finding allegations of receipt of a single *text message* sufficient to establish a concrete injury necessary to establish standing). Therefore, because Plaintiff has adequately alleged that Defendant sent her at least one unwanted *text message* as outlined under the *TCPA*, she has established Article III

---

[4] While Defendant characterizes his Motion in part as a motion to strike, Defendant makes no argument in favor of striking any portion of the Complaint. *See generally* ECF No. [9].

[5] Plaintiff also notes that while Defendant's Motion purports to also be a motion to strike, Defendant fails to identify any portion of the Complaint it seeks to have stricken. *See* ECF No. [10] at 3.

Case 1:25-cv-02777-TWT   Document 21-1   Filed 09/22/25   Page 5 of 8

Bosley v. A Bradley Hosp. LLC, 2025 U.S. Dist. LEXIS 183986

standing.[6]

Defendant is also unable to demonstrate that Plaintiff has failed to state a claim upon which relief may be granted. To plausibly assert a **TCPA** violation under 47 U.S.C. § 227, "a plaintiff must allege '(1) receipt of more than one telephone **call** within any 12-month period; (2) by or on behalf of the same entity; and (3) in violation of the regulations promulgated by the FCC.'" Perischett v. T-Mobile USA, Inc., 479 F. Supp. 3d 1333, 1339 (N.D. Ga. 2020) (quoting Wagner v. CLC Resorts & Devs., Inc., 32 F. Supp. 3d 1193, 1197 (M.D. Fla. 2014)); Lawson v. Visionworks of Am., Inc., 741 F. Supp. 3d 1251, 1253 (M.D. Fla. 2024). There is no dispute that Plaintiff has adequately alleged the first two elements for both Counts I and II, given that a **text message** constitutes a "**call**" under the **TCPA** and the **text messages** were alleged to have been sent over the course of several months. See Eldridge v. Pet Supermarket Inc., 446 F. Supp. 3d 1063, 1067-68 (S.D. Fla. 2020) [*13] ("A **text message** to a cell phone qualifies as a '**call**' under the **TCPA**.") (citing Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 156, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016), as revised (Feb. 9, 2016); Legg v. Voice Media Grp., Inc., 990 F. Supp. 2d 1351, 1354 (S.D. Fla. 2014) (noting that the **TCPA** and the accompanying federal regulations "apply with equal force to conventional telephone **calls** and **text messages**, as a **text message** qualifies as a '**call**' within the meaning of the **TCPA**."); Pariseau v. Built USA, LLC, 619 F. Supp. 3d 1203, 1206 (M.D. Fla. 2022) ("In several rules, the FCC reiterates that the **TCPA** affords **text messages** 'the same consumer protections . . . as voice **calls**.'") (internal quotations omitted). Therefore, Defendant's Motion solely concerns the third element—whether there are allegations sufficient to establish that Defendant's **text messages** to Plaintiff violated FCC regulations.

Plaintiff asserts two regulatory violations here. In Count I, Plaintiff alleges a violation of 47 C.F.R. § 64.1200(c), which "prohibits entities from making 'telephone solicitations' to '[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-**call** registry." Lawson, 741 F. Supp. 3d at 1254. "The term telephone solicitation means the initiation of a telephone **call** or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services . . .." Id. (quoting 47 C.F.R. § 64.1200(f)(15)). In the Complaint, Plaintiff alleges that she "registered her phone number with the national do-notcall registry on November 11, 2009, and has been registered at all times relevant to this action." ECF No. [1] at ¶ 34. Additionally, Plaintiff alleges that [*14] Defendant sent multiple telemarketing messages to her, encouraging "the future purchase or investment in property, goods, or services," by "promoting Defendant's restaurant and entertainment services." Id. at ¶ 22. According to Plaintiff, these messages contained both "discounts and promotions" with the intent to drive customers to Defendant's business. The allegations are sufficient to establish a § 64.1200(c) violation as Plaintiff has adequately alleged that (1) her residential phone number was on a do-nocall registry and (2) she received "telephone solicitations" from Defendant.[7] See Klassen, v. Protect My Car Admin Servs., Inc., 599 F. Supp. 1243, 1246 (M.D. Fla. 2021) (finding that allegations that the plaintiff's number was on the Do Not **Call** Registry and that the defendant subsequently **called** the plaintiff "for solicitation purposes" was "sufficient to plead a violation of Section 227(c)").

Defendant argues that the messages sent to Plaintiff did not violate § 64.1200(c) because they were not advertisements. However, even if true, that fact would not undermine the validity of Plaintiff's **TCPA** claim. Under § 64.1200(c), a plaintiff does not need to establish that the messages she received constituted advertisements, but only that they amounted to telephone solicitations. Plaintiff adequately alleges that the **text** [*15] **messages** were for the purposes of solicitation and thus has adequately alleged a violation of § 64.1200(c).

Defendant's only other argument regarding Count I is that Plaintiff effectively consented to the **text messages** because she sent multiple **text messages** with the words "No stop." The Court need not consider whether the "No Stop" message could reasonably be construed as Plaintiff's affirmative consent to receive additional messages for the purposes of evaluating the sufficiency

---

[6] Defendant's argument that Plaintiff's failure to establish that the **text messages** were advertisements is not a standing argument but rather an argument that Plaintiff has failed to state a claim. As such, the Court will discuss the issue in the failure to state a claim section of the Opinion.

[7] The Court notes that "[c]alls that 'violat[e] the do-not-**call** requirements' . . . 'need not be automated to violate the regulations.'" Klassen v. Protect My Car Admin Servs., Inc., 599 F. Supp. 3d 1243, 1245 (M.D. Fla. 2021); Somogyi v. Freedom Mortg. Corp., No. CV 17-6546 (JBS/JS), 2018 U.S. Dist. LEXIS 129697, 2018 WL 3656158, at *4 (D.N.J. Aug. 2, 2018)).

Case 1:25-cv-02777-TWT   Document 21-1   Filed 09/22/25   Page 6 of 8
Page 6 of 8

Bosley v. A Bradley Hosp. LLC, 2025 U.S. Dist. LEXIS 183986

of Count I. Plaintiff alleges that the first "No stop" message was sent in *response* to Defendant after she had received multiple **text message** solicitations. *See* ECF No. 1 at ¶¶ 14-15. Therefore, even assuming that Plaintiff's "No stop" message constituted approval by Plaintiff to receive more solicitations, the initial messages from Defendant were necessarily sent to Plaintiff without prior consent or approval.[8] Therefore, because there need only be "more than one" unwanted **text message** sent to a phone number on the Do Not **Call** Registry in order to establish a violation, consent to receive subsequent messages does not defeat the claim that Defendant violated § 64.1200(c) when it sent the initial two messages. *See* Perishett, 479 F. Supp. 3d at 1339 (explaining that [*16] there simply needs to be more than one unwanted **call** to establish a **TCPA** violation).

Defendant's arguments regarding Count II are similarly unpersuasive. In Count II, Plaintiff alleges a violation of 47 C.F.R. § 64.1200(d), which provides "that '[n]o person or entity shall initiate any **call** for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing **calls** made by or behalf of that person or entity.'" Persichetti, 479 F. Supp. 3d at 1338 (quoting 47 C.F.R. § 64.1200(d)). "The term telemarketing means the initiation of a telephone **call** or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *47 C.F.R. § 64.1200(f)(13)*. The procedures instituted by the party must meet the following standards:

   (1) Written policy. Persons or entities making **calls** for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-notcall list.

   (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-**call** list.

   (3) Recording, disclosure of do-not-**call** [*17] requests. If a person or entity making a **call** for telemarketing purposes (or on whose behalf such a **call** is made) receives a request from a residential telephone subscriber not to receive **calls** from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-**call** list at the time the request is made. Persons or entities making **calls** for telemarketing purposes (or on whose behalf such **calls** are made) must honor a residential subscriber's do-not-**call** request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing **call** is made, the person or entity on whose behalf the telemarketing **call** is made will be liable for any failures to honor the do-not-**call** request. A person or entity making a **call** for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be **called** to a party other than the person or entity on whose behalf a telemarketing **call** [*18] is made or an affiliated entity.

   (4) Identification of sellers and telemarketers. A person or entity making a **call** for telemarketing purposes must provide the **called** party with the name of the individual caller, the name of the person or entity on whose behalf the **call** is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long-distance transmission charges.

*47 C.F.R. § 64.1200(d)(1)-(4)*.

Plaintiff has adequately alleged that Defendant violated *47 C.F.R. § 64.1200(d)*. There is no dispute that Plaintiff has adequately alleged that she received **text messages** to her residential[9] phone number from Defendant. Furthermore, Defendant does not challenge or otherwise dispute Plaintiff's allegations that Defendant "failed to maintain a master opt-out list" or that Defendant "does not have a written policy for maintaining an internal do not **call** list pursuant to 47 [C.F.R.] § 64.1200(d)(1)." ECF No. [1] at ¶¶ 19-24. Instead, Defendant argues that, notwithstanding those allegations, Count II still fails to state a claim because

---

[8] As Plaintiff points out, the Complaint alleges that Plaintiff never provided any prior consent to receive **text messages** from Defendant. She did not "express written consent," and she "had no existing business relationship with Defendant." ECF No. [1] at ¶¶ 28,31.

[9] *See* ECF No. [1] at ¶ 9 (describing her telephone number ending in 9198 as her "residential telephone number").

Case 1:25-cv-02777-TWT   Document 21-1   Filed 09/22/25   Page 7 of 8

Page 7 of 8

Bosley v. A Bradley Hosp. LLC, 2025 U.S. Dist. LEXIS 183986

Plaintiff has not established that the messages Defendant sent were "advertisements," and because Plaintiff [*19] acknowledges that she consented to the **text messages** by responding with **text messages** saying "No stop."

Defendant's argument that it did not send "advertisements" fails as to Count II for the same reasons the argument failed with respect to Count I. As Plaintiff correctly points out, she alleges that she received "telemarketing" messages from Defendant, not advertisements. The operative regulation, 47 C.F.R. § 64.1200(d), does not require that the **text messages** amount to "advertisements," and therefore, Plaintiff's allegations that the messages were "telemarketing" messages as opposed to "advertisements" is not fatal to her claim. Plaintiff properly alleges that the messages were more than informational and thus constituted "telemarketing" messages as the messages were sent to promote Defendant's restaurant and entertainment services and informed recipients of Defendant's discounts and promotions. See Lawson, 741 F. Supp. 3d at 1254-55 (finding that a message amounted to telemarketing because "[s]imply put, the message was not purely informational, and Defendant did stand to gain financially from a transaction with Plaintiff if he acted on the message.").

Defendant's final argument concerns the "No stop" **text messages** Plaintiff sent to [*20] Defendant in response to its telemarketing messages. Plaintiff alleges that her repeated **text messages** to Defendant stating "No stop" were clear directives to Defendant to stop sending telemarketing **text messages** to her phone number. As Plaintiff correctly points out, it may be inferred that "internal do-not **call** procedures are deficient when **calls** to an individual who has requested not to be **called** continue." 47 C.F.R. § 64.1200(d); see e.g., Menin v. Star Markets Co. Inc., No. 23-CV-11918-DJC, 2024 U.S. Dist. LEXIS 161422, 2024 WL 4123522, at *3 (D. Mass. Sept. 9, 2024) (citing Eagle v. GVG Cap., LLC, No. 22-cv-00638-SRB, 2023 U.S. Dist. LEXIS 15834, 2023 WL 1415615, at *4 (W.D. Mo. Jan. 31, 2023); Adam v. CHW Grp., Inc., No. 21-cv-19-LRR, 2021 U.S. Dist. LEXIS 170620, 2021 WL 7285905, at *2, 9 (N.D. Iowa Sept. 9, 2021). Therefore, since Defendant purportedly continued to send messages after receiving the "No stop" replies from Plaintiff, she has provided sufficient allegations that Defendant failed to "institute procedures for maintaining a list of persons who request not to receive telemarketing **calls** made by or on behalf of [Defendant]." 47 C.F.R. § 64.1200(d).

Defendant contends that pursuant to 47 C.F.R. 64.1200(a)(1), there can be no **TCPA** violation where a plaintiff expressly consents to receiving the text and has not otherwise revoked that consent since that individual would no longer be on the entity's do-not-**call** list. Defendant argues that the phrase "No stop" indicated to the Defendant that it should continue to send the telemarketing messages to Plaintiff's phone number and therefore it did not need to [*21] put Plaintiff on its internal do-not-**call** list. The Court finds Defendant's argument unpersuasive.

Plaintiff's "No stop" messages do not conclusively establish that Plaintiff consented to future telemarketing messages from Defendant. The provision Defendant cites to—47 C.F.R. § 64.1200(a)(10)—provides that any prior consent to receive **text messages** may be revoked by either "using the word stop, quit, end, revoke, opt-out, cancel, or unsubscribe' sent in reply to an incoming message" or "by using any reasonable method to clearly express a desire not to receive further **text messages** or **calls** from the caller or sender." Here, Plaintiff alleges that she texted the word "stop" in response to Defendant's telemarketing messages, creating a reasonable inference that she revoked any potential prior consent to receive telemarketing messages from Defendant. See 47 C.F.R. § 64.1200(a)(10) ("Any revocation request made . . . using the words 'stop,' . . . sent in reply to an incoming **text message**; or pursuant to a website or telephone number designated by the caller to process opt-out requests constitutes a reasonable means per se to revoke consent. If a **called** party uses any such method to revoke consent, that consent is considered definitively revoked [*22] and the caller may not send additional robocalls and robotexts."); see also Persichetti, 2020 WL 4811003 at *1340 (finding claim was sufficient where there was a reasonable "inference that Defendant failed to honor Plaintiff's do-not-**call** request"). Although the word "No" precedes the word "stop" in the messages sent to Defendant, the Court finds that when viewing the allegations as true, a reasonable person would likely understand "No stop" to mean stop sending the receipt messages, not "continue" sending messages. See 47 C.F.R. § 64.1200(a)(10) ("If a reply to an incoming **text message** uses words other than 'stop,' 'quit,' 'end,' 'revoke,' 'opt out,' 'cancel,' or 'unsubscribe,' the caller must treat that reply text as a valid revocation request if a reasonable person would understand those words to have conveyed a request to revoke consent."); see also Legg v. Voice Media Grp., Inc., 990 F. Supp. 2d 1351, 1354 (S.D. Fla. 2014) ("[B]ecause the **TCPA** is a consumer protection statute that is remedial in nature, it

Case 1:25-cv-02777-TWT    Document 21-1    Filed 09/22/25    Page 8 of 8

Page 8 of 8

Bosley v. A Bradley Hosp. LLC, 2025 U.S. Dist. LEXIS 183986

should be construed liberally in favor of consumers."). This is especially true given Plaintiff's allegations that she was already on the national do-not-*call* registry and sent the "No stop" messages on multiple occasions. Under the circumstances, the phrase "No stop" cannot reasonably be understood as an invitation **[*23]** for continued solicitations. Moreover, Defendant offers no case law or other authority suggesting that the phrase "No stop" is an expression of consent such that the Court should dismiss Plaintiff's claims. Therefore, because there is no basis to dismiss either of Plaintiff's claims, Defendant's Motion is denied.

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss, **ECF No. [9]**, is **DENIED**.

2. Defendants shall file an answer to the Complaint no later than **October 2, 2025**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on **September 18, 2025**.

/s/ Beth Bloom

**BETH BLOOM**

**UNITED STATES DISTRICT JUDGE**

---

**End of Document**